**218**

UNITED STATES, Appellee,

v.

Larry B. HAMMOND, Specialist Five,
U.S. Army, Appellant.

No. 45,100.

GCM 442480.

U.S. Court of Military Appeals.

Feb. 21, 1984.

For Appellant: *Colonel William G. Eckhardt, Major Robert C. Rhodes, Major Paul L. Luedtke,* and *Captain Lawrence R. Hughes, Jr.* (on brief); *Lieutenant Colonel R. Rex Brookshire II.*

For Appellee: *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Captain Glenn D. Gillett,* and *Captain Michael S. Child* (on brief).

*Opinion of the Court*

COOK, Judge:

Tried by a general court-martial composed of officer and enlisted members, the accused was convicted, pursuant to his pleas, of rape, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. The sentence adjudged was a dishonorable discharge, confinement at hard labor for 10 years, forfeiture of all pay and allowances, and reduction to Private E–1. In accordance with a pretrial agreement, the convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement at hard labor for 4 years, forfeiture of all pay and allowances, and reduction to Private E–1. The Court of Military Review affirmed in a memorandum opinion. We granted accused's petition for review on the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY DENYING A DEFENSE MOTION FOR APPROPRIATE RELIEF AND ADMITTING, AS EVIDENCE IN AGGRAVATION, TESTIMONY RELATING TO THE GENERAL EFFECTS OF RAPE TRAUMA FROM A WITNESS HAVING NEITHER INTERVIEWED NOR COUNSELED THE VICTIM OF THE OFFENSE.

We hold that the military judge did not err and affirm.

After the accused's provident pleas of guilty were accepted by the military judge, the Government presented to the members a stipulation of fact which described the offense and the victim. Then the Government put the victim on the stand to testify to the events leading up to the rape. She told of leaving her home to go to a gasthaus and being followed by the accused, who was in his car. At this point in her testimony,

she became sick. After a brief recess, the victim described how the accused stopped beside her and said "home." It might be noted that the victim spoke virtually no English. Then she began to cry, but did relate that the accused had grabbed her by the front of her shirt and pulled her into the car. She described pleading with him and being taken to a wooded area. Once again the victim could not continue and a second recess was taken. After a space of some 18 minutes, the trial resumed, but the only question trial counsel asked the victim was if she had consented to have sexual intercourse with the accused. The victim replied in the negative, and there was no further examination.

The next witness for the Government was the director of the Women's Resource Center, who testified, over objection, as an expert regarding the aftereffects that a rape may have upon a woman. The director testified that among her duties was the responsibility for dealing with rape victims; that she had received some 40 hours of training in this area while working with the Council Against Rape in Alabama; and that she trained and supervised "other rape crisis workers." She further testified that she had also trained military policepersons in how to deal with rape victims. She possessed a Master's Degree in counseling and had done post-graduate work in marriage and family therapy at Auburn University. She had experience in counseling and in providing follow-up therapy for rape victims. The director testified as to the effect of the crime of rape on the victim, as compared to the effect of other crimes against property and persons on those victims, and regarding certain symptoms that are so typical of a rape victim's behavior that they have been identified as the "rape trauma syndrome."

Based on her experience, her reading of the stipulation of fact, and the victim's in-court testimony, the director made some general conclusions about the effect of the rape upon the victim in this case. Her "professional hunch" was that the victim was "someone who has probably a difficulty dealing with stress . . . that the fact that she was raped so near her home . . . and that she's not able to move away from the place . . . would affect how she responds to this rape"; and, "that she . . . led almost a reclusive kind of life, that she didn't venture out of her home and then the first time she did venture out of her home, that she had something like this happen to her, it would be my professional opinion that that would have some pretty far reaching results." It would appear that the witness based her testimony both on what she had read and what she had observed of the victim's demeanor while the latter was testifying. What we must decide here is whether this expert testimony was admissible after findings for the purpose of determining the sentence to be imposed.

We begin our analysis by referring to paragraph 75b (4) of the Manual for Courts-Martial, United States, 1969 (Revised edition) (Change 5), which provides:

> If a finding of guilty of an offense is based on a plea of guilty and available evidence as to any aggravating circumstances relating to the offenses of which the accused has been found guilty was not introduced before findings, the prosecution may introduce such evidence after the findings are announced.

This paragraph seems to assume that the evidence introduced by the prosecution is of the sort that could have been introduced before findings had the accused not pleaded guilty.[1] Thus, we must look to the Military Rules of Evidence for guidance as to the admissibility of this evidence.

Mil.R.Evid. 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may

1. As the issue before us concerns testimony after findings, we do not here decide the admissibility of such evidence before findings. However, *see United States v. Moore,* 15 M.J. 354 (C.M.A.1983).

testify thereto in the form of an opinion or otherwise.

The Editorial Comment provided by S. Saltzburg, L. Schinasi and D. Schlueter, *Military Rules of Evidence Manual* 325 (1981), includes this sentence: "The expert who is called to testify need not be 'an outstanding practitioner,' but need only be a person who can help the jury." We agree with the military judge that the witness met this standard of expertise.

Mil.R.Evid. 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert, at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The Editorial Comment in *Military Rules of Evidence Manual, supra* at 327, advises that

> an expert may base an opinion upon facts or data that he has perceived or that he has been told about, either while watching the trial or hearing or before, as long as the facts or data upon which the expert relies are "reasonably relied upon by experts in the particular field." This is so even though the facts or data would not otherwise be admissible in evidence.

From this, we may conclude that there was nothing improper about having the witness testify and give her opinions which were based on her observation of the victim while she was testifying in open court, as well as on the stipulation of fact. *See United States v. Allen,* 7 M.J. 345 (C.M.A.1979).

This leaves us with the root issue as to whether her testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Mil.R.Evid. 702. We may also take note of the broad definition of relevant evidence set forth in Mil.R. Evid. 401 and the limitations on admissibility under Mil.R.Evid. 402.

Initially, we note that the issue of guilt was no longer before the members when the witness testified; thus, the testimony was not offered for that purpose.[2] However, the *voir dire* of the members disclosed that none of them had a "family member [who] ha[d] been a victim of rape or an attempted rape." A recent study has concluded that one of the great obstacles to proper adjudication of rape prosecutions is the jury members' (or court-martial members') relative lack of education as to the psychological aspects of the crime of rape and that expert testimony may be properly used to provide that education. Ross, *The Overlooked Expert in Rape Prosecutions,* 14 Univ. of Toledo L.Rev. 707 (Spring 1983).[3] Although we may assume that court-martial members may be more "educated" as to violence than a member of an average civilian *petit jury,* we may in no way conclude that they too would not benefit from expert "education" as to the underlying factors present in a particular rape offense.[4]

2. The only issue left for the members to decide was the amount of punishment to be imposed. *See United States v. Schreck,* 10 M.J. 563 (A.F. C.M.R.1980), *pet. denied,* 10 M.J. 327 (1981).

3. Among common misconceptions about rape is that it is a sexual act rather than a crime of violence. Ross, *The Overlooked Expert in Rape Prosecutions,* 14 Univ. of Toledo L.Rev. 707, 708–09 (Spring 1983) (footnotes omitted) states:

> [T]hese rationale ignore the violent life-threatening character of rape. An ever increasing body of professional literature suggests that rape produces an entirely different pattern of psychological response from that which is anticipated by traditional legal precepts of rape. Rather, as a crime of personal violence, rape produces behavioral, somatic

and psychological reactions on the part of the victim that are similar to those of victims of other violent crimes such as robbery. However, since the violence is expressed through a most intimate personal violation of the female victim—aptly described as "the ultimate violation of the self"—the trauma is typically more severe and the identifiable reactions typically more pronounced. This pattern of behavioral, somatic, and psychological reactions has been termed "rape trauma syndrome."

4. The witness testified as to the effects of various crimes upon the layers of personality of a victim. Although the witness did not refer to any specific authority in this area, defense counsel's objections did not attack the validity of her conclusions as to the "rape trauma syn-

Hence, we conclude that the expert testimony provided here "assist[ed] the trier of fact to understand the evidence." [5]

The military judge has the discretion to determine the admissibility of evidence. Under the facts of this case, we hold that he did not abuse that discretion.[6]

The decision of the United States Army Court of Military Review is affirmed.

Judge FLETCHER concurs.

EVERETT, Chief Judge (concurring in the result):

Over defense objection, the military judge received as evidence in aggravation the testimony of Mrs. Jeanne E. Koss, the director of the Women's Resource Center, which was part of Army Community Services in Kaiserslautern, Germany. Her duties there were "to recruit, train, and supervise women's advocates to assist women with any number of concerns"; and "[o]ne of those areas is dealing with rape victims." Mrs. Koss, who had a Master's degree in counseling from the University of Arizona and had done post-graduate work elsewhere, testified in some detail about the effects which rape has upon women in general. She had not examined the rape victim—although she had observed her testifying in court.

I do not dispute that the Government was entitled to offer evidence concerning the mental condition of the rape victim after she had been sexually attacked. However, as the staff judge advocate observed in his review of this case,

no such direct evidence concerning the rape victim's mental condition after the sexual assault upon her was, in fact, presented by the prosecution. The rape victim testified only as to those matters leading up to the offense and Mrs. Koss, the Woman's Advocate, testified only as to the effects of rape upon women in general, with a fleeting reference that those effects in the present victim's case would have "some pretty far reaching results."

The staff judge advocate concluded that it was error to permit the prosecution to enter evidence concerning the mental condition of all rape victims in general without showing how the present rape victim was affected, if at all. Such general evidence was irrelevant unless preceded or followed by other specific evidence concerning the present victim. (*US v. Wordwand*, 39 CMR 6; *US v. Bowman*, 44 CMR 285; *St Joe Paper Co. v. US*, 155 F.2d 93 [(5th Cir.1946)]; and *US v. Williams*, 583 F.2d 1194 [(2nd Cir. 1978)]).

However, he also concluded that, in view of the sentence reduction which the convening authority was already required to grant by reason of a pretrial agreement, the effects of the error in sentencing would be cured.

Without reaching the issue of admissibility, I join in affirming the decision below, since—like the staff judge advocate—I am convinced that any error was cured by the action of the convening authority.

---

drome." It appears that Mil.R.Evid. 702 "may be broader" than the test for scientific evidence set out in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). Drafter's Analysis, Appendix 18, Manual for Courts-Martial, United States, 1969 (Revised edition).

5. *United States v. Marshall*, 14 M.J. 157 (C.M. A.1982); *United States v. Schreck, supra.*

6. Obviously expert testimony of this sort must be related specifically to the victim. However, whether or not the expert's testimony was suf-

ficiently connected to the effect of the crime on the victim in this case, the accused was not prejudiced, since the staff judge advocate in his review advised the convening authority that the witness' testimony was erroneously admitted because it was not "preceded or followed by other specific evidence concerning the present victim." He further advised the convening authority that a meaningful reassessment of sentence was proper, but that approval of the sentence required by the pretrial agreement constituted a sufficient reduction of punishment to cure the error.