**UNITED STATES**

v.

**Staff Sergeant Harvey W. EASTMAN, FR 009–36–5047, United States Air Force.**

**ACM 24599.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 23 Aug. 1984.

Decided 9 Aug. 1985.

Appellate Counsel for the Accused: Colonel Leo L. Sergi and Captain Timothy J. Malloy.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major Robert E. Ferencik, Jr.

Before RAICHLE, CANELLOS and CARPARELLI, Appellate Military Judges.

### DECISION

CARPARELLI, Judge:

The appellant was convicted of raping the complainant, JG, in the bedroom of her quarters. Several witnesses testified that the accused and others had played cards at JG's house on the evening of the incident and that JG and her brother had become so intoxicated that the accused and the other guests left. The complainant testified that the appellant returned to her house during the night and raped her. She stated that she had been asleep in her room when she awoke and saw the appellant. She said that, despite her calls for help and her protestations, he forced himself on her and had intercourse with her without her consent. The appellant testified in his own behalf and said he returned to the house to check on the welfare of the children and the two intoxicated adults. He stated that, while he was in the house, the complainant, who was on the living room couch, said something. He went over to her, knelt next to her, and asked her if she was all right. He testified that the complainant then sat up, looked at him, and kissed him passionately. According to the appellant, after a few minutes of foreplay, they went to the bedroom and had consensual intercourse. The central issue at trial was, therefore, consent.

Appellate defense counsel have raised four issues. We will discuss only one: whether the military judge properly admitted expert testimony that the complainant exhibited psychological symptoms of Rape Trauma Syndrome.[1] We find prejudicial error and reverse the conviction.

During an Article 39(a), 10 U.S.C. § 839(a), session after presentation of the defense case in chief, the prosecution stated that it intended to call two rebuttal witnesses. In an "offer of proof" trial counsel stated that one of the witnesses would testify that "the victim has exhibited classic rape trauma syndrome." He stated that the witness was qualified to render such an opinion because: (1) she was then assigned duties "in Social Actions as a rape counselor," (2) she had a bachelor's degree in sociology and a master's degree in counseling, (3) she wrote "her thesis or one of her major papers" on rape, and (4) she

---

1. Rape Trauma Syndrome refers to a discernible condition consisting of behavioral, somatic, and psychological reactions common among rape victims. Burgess and Holmstrom, *Rape Trauma Syndrome*, 131 Am.J. Psychiatry 981 (1974). Although it is not listed as a distinct diagnosis by the American Psychiatric Association in its Diagnostic and Statistical Manual of Mental Disorders, Third Edition, 1980, (hereinafter cited as DSM–III), it appears to be very similar to Post-traumatic Stress Disorder, which is listed. DSM–III, 236–239.

attended over fifty hours of rape crisis training.

After the defense was given a recess to interview the witness, the defense counsel objected on the grounds that the witness' degree in "general counseling" and her experience as a telephone crisis line counselor did not qualify her as an expert on the issue of Rape Trauma Syndrome. He also argued that the proposed testimony was not probative because the witness first interviewed the complainant more than three months after the alleged offense. Finally, counsel contended that the danger of unfair prejudice substantially outweighed the testimony's probative value.

When the military judge asked for more information regarding the witness' qualifications, the trial counsel stated that the witness: (1) had received a Bachelor's degree in sociology and a Master's degree in counseling, (2) had written a "major paper as part of this Masters on rape," and (3) had nearly a hundred hours of training on the subject of rape in addition to her Master's degree in counseling.

The military judge then asked whether the witness was assigned Air Force duties in this field or was merely a volunteer worker. The trial counsel responded that she was assigned duties as "Social Actions Officer and Rape Crisis Monitor for the base."

Without inquiring regarding the defense's concurrence in the offer of proof or receiving a stipulation from the parties, the military judge overruled the defense objection and stated that he would allow the witness to testify as an expert. When doing so he did not expressly rule that testimony regarding a diagnosis of Rape Trauma Syndrome would be helpful or that the witness was qualified as an expert in psychology. At the conclusion of the trial, however, the military judge instructed the court members that the witness was an expert who presented testimony regarding "the possible psychological condition" of the complainant. Thus, in light of the judge's apparent acceptance of the government's "offer of proof" and his instructions

to the court, it appears that the military judge concluded that testimony that the complainant suffered from Rape Trauma Syndrome would be helpful and that the witness was an expert on the psychological condition of the complaint.

Appellate defense counsel argue that the military judge's ruling in regard to the testimony violated Military Rule of Evidence 702. Rule 702 states:

*Testimony by experts.*

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

## Offer of Proof

■ The proponent of expert testimony has the burden of presenting evidence demonstrating that the testimony will help the trier of fact and that the proposed witness possesses sufficient knowledge, skill, experience, training or education to testify in regard to such matters. Mil.R. Evid. 702. *See* Mil.R.Evid. 104(b). Absent a stipulation by the parties, an offer of proof is not evidence and cannot properly be used to establish a foundation for the admissibility of evidence. The proper role of such offers is to allow the proponent of excluded evidence to make a record for appeal of the judge's ruling. Mil.R.Evid. 103(a)(2); *United States v. Barbeau*, 9 M.J. 569 (A.F.C.M.R.1980); S. Saltzburg, L. Schinasi, and D. Schlueter, Military Rules of Evidence Manual, 17 (1981). This court is aware that, in practice, oral summaries of expected testimony, sometimes erroneously referred to as "offers of proof", are often used to enable a military judge to anticipate the need for Article 39(a) sessions, recesses, and adjournments, and to help him or her better understand and evaluate the relevancy of evidence in light of evidence expected to be presented. Summaries such as these, however, must be distinguished from "offers of proof" which

are described in M.R.E. 103. More importantly, however, we must emphasize that neither a summary nor an offer of proof can serve as a proper evidentiary foundation when a party objects on grounds of the existence or sufficiency of such foundation.

In the case now before us, we find that the military judge abused his discretion when he overruled the defense's objection without first receiving sufficient evidence from the proponent to satisfy the burden of establishing a foundation for admissibility. Mil.R.Evid. 702, 103(a).

Had the prosecution's evidence conformed to its offer of proof, the government might persuasively argue that the military judge's ruling was not error, Mil. R.Evid. 103(a), or that it was harmless error. The evidence eventually presented, however, departed from the offer both as to the substance of the testimony and the qualifications of the witness. As to the witness' qualifications it differed from the offer in the following respects:

(1) The witness was not assigned official duties pertaining to rape. Her testimony explicitly negated this aspect of the prosecution's earlier assertion and, instead, established that the witness had only received training as a volunteer in the civilian community.

(2) As part of her Masters degree program the witness had done "a lot of paperwork on rape." There was no evidence suggesting that the "paperwork" was a thesis or major paper.

(3) Although the witness testified that she had received training in rape counseling in Florida, she testified that a portion of that training amounted to 3 hours a week for 14 weeks and not 5 hours per week as stated in the prosecution's second offer of proof.

(4) Although the witness indicated that her undergraduate studies emphasized

sociology, she stated that her bachelor's degree was granted in social science.[2]

In addition to the above, the witness testified that:

(1) she had taken a course in Community Resources during which she spent an undisclosed amount of time working for a Florida rape crisis agency in an undisclosed capacity,[3]

(2) she had received 23 to 27 hours of training on a sexual assault crisis line in Anchorage, Alaska, which covered "the legal, medical aspects, what to do with the victim, the traits that the victim would exhibit, and the resource agencies in town we would refer the client." [Sic.]

These discrepancies illustrate why offers of proof cannot be used to establish required evidentiary foundations. The military judge in this case ruled on the admissibility of expected testimony which was never presented. In addition, the record does not show that the military judge noted the discrepancies in the actual testimony or reconsidered his ruling on the basis of the evidence actually presented. To determine the effect of the error we must decide whether, despite the error, the evidence actually presented was, nevertheless, admissible under Rule 702. Mil.R.Evid. 702. After applying Rule 702, we conclude that the prosecution failed to present sufficient evidence to qualify the witness as an expert regarding the matters to which she testified and that the error prejudiced the substantial rights of the accused.

### Application of Rule 702

■ The prosecution may present evidence of a person's injuries if it can be shown, by some evidence, that the injuries relate to an issue in the case. It is fundamental to recognize that evidence of a rape

---

**2.** We have concluded that, absent a showing of courses directly relating to rape, evidence of a bachelor's degree in either social science or sociology would be of limited value when determining a witness' qualifications to testify regarding the psychological condition of a rape victim.

**3.** Because the witness never testified regarding the dates of her masters degree program, the court members were provided with no information about when this training occurred.

victim's blackened eye, for example, is not relevant on the issue of lack of consent unless there is some evidence that the injury first appeared after the rape and was, arguably, inflicted in the course of the rape. Similarly, we see no reason why the prosecution should not be permitted to present evidence of psychological injury, as manifested by apparent somatic, behavioral, or emotional symptoms, if there is some evidence that such symptoms first appeared after the rape and were, arguably, a product of forcible nonconsensual intercourse. *State v. Marks*, 231 Kan. 645, 647 P.2d 1292 (1982); Massaro, *Experts, Psychology, Credibility, and Rape: The Rape Trauma Syndrome Issue and Its Implications for Expert Psychological Testimony*, 69 Minn.L.Rev. 395 (1985); *see State v. Taylor*, 663 S.W.2d 235 (Mo.1984) (en banc). *But see People v. Bledsoe*, 203 Cal.Rptr. 450, 681 P.2d 291, 681 P.2d 291 (1984) (en banc); *State v. Saldana*, 324 N.W.2d 227 (Minn.1982) (en banc); *Checking the Allure of Increased Conviction Rates: The admissibility of Expert Testimony on Rape Trauma Syndrome in Criminal Proceedings*, 70 Va.L.Rev. 1657 (1984).

As to the case before us, we note that during the government's case-in-chief, the prosecution presented no evidence suggesting that the complainant experienced or manifested any symptoms of recent psychological injury after the incident. *See United States v. Hammond*, 17 M.J. 218 (C.M.A.1984) (Everett, C.J., concurring in the result). The only evidence even remotely asserting a claim of recent psychological injury was the complainant's testimony on cross-examination that, although she spoke of the incident with a girlfriend and her brother, she found it difficult to talk about the incident with her husband and the police. Thus the purported expert's testimony regarding the complainant's psychological condition after the alleged rape would only be relevant if the expert's testimony indicated that symptoms first arose after the alleged rape and resulted from it.

In an apparent and essential effort to establish the relevance of the expert evidence the prosecution elicited testimony in which the purported expert affirmed that there are "certain symptoms" that rape victims exhibit and that she was familiar with "accepted criteria or symptoms that rape victims exhibit." When asked to relate to the court the symptoms she saw in the complainant which "are accepted as criteria for rape victims," the witness described what she had been told and what she observed in the course of an interview of the complainant five days before trial and more than three months after the alleged rape. According to the witness, the complainant came to her to talk about her drinking problem. The witness testified that the complainant said she did not want to talk about the rape, that she wished it was over and that she did not ever want to deal with it. The witness described the complainant as "blocking" and as being "very nervous when she came in," "on edge," and "hesitant in speech." The testimony also revealed that JG reported matters which the witness described as eating and sleeping disturbances. The only details provided were that the complainant was not getting as much sleep as she normally did.

■ Because the witness did not say that she had determined that the drinking, eating, and sleeping problems first appeared after the alleged rape, the relevance of those matters was entirely dependent on the witness' conclusion that such matters are "normal" and "accepted as criteria for rape victims." Thus the crucial question is whether the witness was properly qualified to evaluate the complainant's psychological condition and interpret it in light of criteria which are accepted as the basis of a diagnosis of Rape Trauma Syndrome. As a result, our decision in this case turns on the question of the witness' qualifications and not on the admissibility or inadmissibility of evidence of Rape Trauma Syndrome.

The government has cited *United States v. Hammond, supra,* in support of their argument that the witness' testimony was properly admitted. In *Hammond* the

government offered expert testimony as evidence in aggravation after the accused pled guilty to rape. The witness was the director of a women's resource center who possessed a Master's Degree in counseling, had done post-graduate work in marriage and family therapy, had experience in counseling and in providing follow-up therapy for rape victims, had trained military police personnel regarding their contacts with rape victims, and had trained and supervised rape crisis workers. The Court of Military Appeals ruled that the witness could properly testify, during the sentencing portion of the trial, regarding the effect of rape on its victims, the symptoms of Rape Trauma Syndrome, and her opinion that the crime would have "some pretty far reaching" effects on the victim in that case. *Hammond*, 17 M.J. at 219. We have concluded that the holding in *Hammond* does not control our decision because the witness in this case was less qualified than the one in *Hammond* and, yet, testified during trial on the merits to matters requiring greater expertise.

The witness' qualifications were listed earlier in this decision. Her most significant credentials included: "[t]raining in the legal, medical aspects [of rape], what to do with the victim, the traits the victim would exhibit, and the resource agencies we would refer the client," [sic], work, apparently as a student volunteer, with a rape crisis agency in an undisclosed capacity for an undisclosed length of time sometime in the past, "a lot of paperwork on rape" as part of her studies toward a masters degree in counseling, and "familiarity" with "accepted criteria or symptoms that rape victims exhibit."

It is also important to note that the witness did not state: whether, in addition to receiving training, she had ever been employed as a rape counselor; the number of rape victims she had worked with; whether any contacts with rape victims were in person or over the telephone; whether such contacts were merely for the purpose of referral to other agencies or to provide therapy; whether such contact was normally shortly after the alleged rape or as much

as three months later; to what extent her training focused on Rape Trauma Syndrome; whether she had training or experience in conducting clinical evaluations; whether she was trained or experienced in the diagnosis of mental conditions; or whether she had ever before testified as an expert on such matters.

We also note that under applicable Air Force directives and standards the witness could not properly be called upon to perform a clinical evaluation for official Air Force medical use. Air Force Regulation (AFR) 168–4, *Administration of Medical Activities*, 11 July 1980, para. 3–31, (assigning responsibility for evaluation and diagnosis of mental health outpatients); AFR 160–12, *Medical Services, Professional Policies and Procedures*, 13 August 1982, paragraphs 38 and 39, (stating that clinical psychologists and clinical social workers provide psychological and psychosocial diagnosis and assessment of mental disorders); AFR 160–42, *Psychiatry in Military Law*, 25 September 1981, Chapter 5, (describing the role of the clinical psychologist in military justice); AFR 168–13, *Medical Administration, Quality Assurance in the Air Force Medical Service*, 31 May 1984, (describing procedures for the review of credentials of health care practitioners and the granting of clinical privileges); AFR 30–2, *Social Actions Program*, 22 June 1981, para. 2–2 (describing the Base Social Actions Staff Role); AFR 36–1, *Officer Classification*, 1 January 1984, Attachment 19, (summarizing the duties, responsibilities, and qualifications of Air Force Social Actions officers).

In *United States v. Moore*, 15 M.J. 354, 360 (C.M.A.1983), the Court of Military Appeals noted that "American judicial opinion is divided on the qualifications of a psychologist, as distinguished from a psychiatrist, to testify to the mental or emotional state of an individual and the impact of the particular state on the individual's behavior. *See United States v. Fields*, 3 M.J. 27 (C.M.A.1977)." In fact, the United States Court of Appeals for the District of Columbia Circuit has stated that some psychologists are not qualified to testify concerning mental disease because they lack sufficient

training and experience. *Jenkins v. United States*, 307 F.2d 637, 644 (D.C.Cir.1962). We are not inclined to allow a witness who presents no evidence of training or experience in.clinical psychology to render a clinical evaluation of a person's psychological condition and testify in terms of diagnostic criteria more easily than one who holds a degree in psychology. *See United States v. Crosby*, 713 F.2d 1066 (5th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 506, 78 L.Ed.2d 696, (trial court properly refused to classify witness as an expert on the ground that only physicians could qualify as diagnostic experts concerning Posttraumatic Stress Disorder). *Cf.* American Bar Association Standards for Criminal Justice 7–3.9 through 7–3.13 (2d Ed.1980) (concerning the qualifications of experts regarding the psychological condition of an accused); *United States v. Marabelles*, 724 F.2d 1374 (9th Cir.1984) (trial court properly excluded expert testimony due to lack of reliability); *Hughes v. Hemingway Transport, Inc.*, 539 F.Supp. 130 (E.D.Pa.1982) (trial court properly excluded testimony of witness who had relevant but insufficient training).

We find that the witness' credentials qualified her only as an expert in rape crisis counseling. There is a significant distinction between a crisis counselor and a mental health clinician qualified to properly identify and evaluate somatic, behavioral, emotional, and psychological symptoms and to interpret such symptoms in terms of an accepted psychological profile or diagnosis. *But cf. People v. Stull*, 127 Mich.App. 14, 338 N.W.2d 403 (1983) (court affirmed use of rape counselor's testimony to explain that rape victim's behavior was not inconsistent with the profile of a rape victim). We find the prosecution failed to demonstrate that: (1) the witness was qualified to conduct a clinical evaluation of the complainant's psychological condition, and (2) the witness was qualified to render an opinion that JG's use of alcohol, unwillingness to discuss the alleged rape with her, and the nature of the reported "eating and sleeping disturbances" would be accepted among relevant experts as criteria for diagnosis of Rape Trauma Syndrome.

When determining the prejudicial effect of an error we do not decide whether the court members were correct in their conclusion as to the guilt of the accused. Instead, we must determine what effect the error had or "reasonably may be taken to have had upon the jury's decision." *Kotteakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946); *United States v. Barnes*, 8 M.J. 115 (C.M. A.1979). In light of all the evidence considered by the court in this case we are unable to say, with fair assurance, that the court's findings were not substantially swayed by the error. *Kotteakos v. United States*, supra, 328 U.S. at 765, 66 S.Ct. at 1248. We, therefore, find that the erroneous recognition of the Social Actions officer as an expert in clinical psychology, the admission of her opinion about the psychological condition of the complainant, and the admission of her opinion regarding accepted diagnostic criteria was prejudicial to the substantial rights of the accused.

Given our conclusions on this issue, we need not consider the remaining assignments of error. The findings of guilty and the sentence are set aside. A rehearing may be ordered.

RAICHLE and CANELLOS, Senior Judges, concur.