STATE OF NORTH CAROLINA v. LEON OXENDINE, JR.

No. COA09-858

(Filed 3 August 2010)

## 1. Appeal and Error— oral notice of appeal insufficient—satellite-based monitoring hearing—civil in nature

Defendant's oral notice of appeal from an order imposing satellite-based monitoring (SBM) upon him was insufficient to confer jurisdiction on the Court of Appeals as SBM hearings and proceedings are civil regulatory proceedings. The Court treated defendant's brief as a petition for *certiorari* and granted said petition to address the merits of defendant's appeal.

## 2. Satellite-Based Monitoring—low risk assessment—judgment vacated

The trial court erred in finding that defendant required the highest possible level of supervision and monitoring and ordering defendant to enroll in satellite-based monitoring where the Department of Corrections' risk assessment determined that defendant was a low level risk.

Judge STROUD concurs in the result with separate opinion.

Appeal by defendant from judgment entered 10 March 2009, by Judge James M. Webb in Rockingham County Superior Court. Heard in the Court of Appeals 3 December 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Joseph Finarelli, for the State.*

*James W. Carter for defendant appellant.*

HUNTER, JR., Robert N., Judge.

Leon Oxendine, Jr. ("defendant") was ordered to enroll in satellite-based monitoring ("SBM") for ten years after release from prison for sexual crimes to which defendant pled guilty. Defendant now appeals from the trial court's judgment arguing that the court erred by (1) finding defendant required the "highest possible level of supervision and monitoring" and (2) ordering defendant to enroll in SBM given that the Department of Corrections' ("DOC") risk assessment determined defendant was a low level risk. In addition, defendant argues that, in the event this Court fails to reverse his sen-

STATE v. OXENDINE

[206 N.C. App. 205 (2010)]

tence based on the aforementioned assignments of error, the Court should hold the SBM statute unconstitutional on due process grounds for vagueness or lack of statutory notice. With regard to defendant's appeal, the State concedes that the trial court's judgment should be vacated due to defendant's low risk assessment, and in light of this Court's recent decisions in *State v. Kilby*, —— N.C. App. ——, 679 S.E.2d 430 (2009) (concluding that the findings of fact were insufficient to support the trial court's conclusion that "defendant required the highest possible level of supervision and monitoring" based upon a "moderate" risk assessment from DOC), and *State v. Causby*, —— N.C. App. ——, 683 S.E.2d 262 (2009) (applying and adopting the holding in *Kilby*). As *Kilby* and *Causby* are controlling, and defendant was assessed to be a "low" level risk, we reverse the decision of the trial court. However, in light of *State v. McCravey*, —— N.C. App. ——, ——, S.E. ——, —— 2010 N.C. App. LEXIS 722 (filed 4 May 2010) (No. COA09-712) (holding that second-degree rape pursuant to N.C. Gen. Stat. § 14-27.3(a) (2009) is an aggravated offense as defined by the statute), we remand to the trial court for entry of an order consistent with this Court's present ruling.

## I. FACTUAL BACKGROUND

On 8 September 2008, defendant was indicted for three counts of second-degree rape involving a mentally disabled victim, two counts of statutory rape by a defendant more than six years older than the victim, and five counts of statutory sex offense by a defendant in a parental role. On 9 March 2009, defendant pled guilty to all charges following a plea agreement with the State. The trial court consolidated the convictions for judgment and sentenced defendant to an active term of 173 to 217 months' imprisonment.

After defendant was sentenced, the trial court attempted to assess defendant's SBM eligibility on three occasions—occurring on 9 March 2009 and 10 March 2009—after a request was made to do so by the State pursuant to N.C. Gen. Stat. § 14-208.40A (2009).

In its first assessment, on 9 March 2009, the trial court made several findings of fact, relying on AOC-CR-615—Judicial Findings and Order for Sex Offenders, including that defendant: (1) was convicted of an offense against a minor, (2) was not classified as a sexually violent offender, (3) was not a recidivist, (4) the offense of conviction was not an aggravated offense, and (5) that the offense of conviction involved the physical, mental or sexual abuse of a minor. Based on these findings, the court ordered that defendant enroll in the SBM

**STATE v. OXENDINE**

[206 N.C. App. 205 (2010)]

program upon his release from prison. The court did not require that DOC ·conduct a Static 99[1] risk assessment or specify a particular duration for the monitoring. Defendant's counsel gave immediate notice of appeal to the trial court's order and expressed doubts about the correctness of the court's determination.

After a brief recess, the trial court struck its initial order and findings of fact and in its second assessment, again relying on AOC-CR-615, made essentially the same findings of fact, except that the court specifically noted that defendant had been convicted of the reportable conviction of rape of a child under the age of twelve as a principal, in violation of N.C. Gen. Stat. § 14-27.2A (2009). Moreover, when asked whether the evidence supported a finding that the offense of conviction was an aggravated offense, the State specifically stated that defendant's conviction was not an aggravated offense. After conducting its findings, the court acknowledged that DOC had not conducted a Static· 99 risk assessment, but nonetheless ordered that defendant enroll in SBM for his natural life following his release from prison. Subsequently, the trial court struck the findings in its second order after the prosecutor notified the trial court that N.C.G.S. § 14-27.2A was inapplicable because defendant's victims were not under the age of twelve as required by the statute.

In its third assessment of defendant's SBM eligibility, the trial court again made findings of fact pursuant to AOC-CR-615 and specifically found that defendant's convictions for second-degree rape were aggravated offenses, as defined by N.C. Gen. Stat. § 14-208.6(1a) (2009). Before the trial court's findings were made, when asked a second time whether defendant's conviction was an aggravated offense, the State answered

> No, sir. The definition of aggravated offense is by force or engaging in a sexual act involving vaginal, anal or oral penetration where the victim was less than 12. And the crimes that he is charged with are not forceable. .

---

1. Where the trial court finds that a male offender committed an offense involving the physical, mental, or sexual abuse of a minor, the court must order DOC to do a Static 99 risk assessment on the offender, allowing at least 30 days but not more than 60 days to complete the assessment. The Static 99 is an actuarial instrument normalized for use with adult males age 18 and older which involves taking answers from an offender to ten standard, predetermined questions, wherein the offender's answers are assigned a point value and tabulated, with the total determining whether the offender poses a low, moderate or high risk of recidivism.

That the second-degree rape was due to the mental retardation of the child, of the woman, and the statutory crimes were not enforceable [sic].

After the trial court inquired as to whether defendant had pled guilty to second-degree rape, the State replied in the affirmative, and stated that "the allegation in the indictment was that—it could be force that the victim was mentally retarded" and that, since "it is alleged by force and against their will[,] I would concur, then, that that is an aggravated offense." Before determining whether defendant should enroll in SBM upon his release for life or for a specific number of years, the trial court ordered DOC to conduct a Static 99 risk assessment of defendant. Chief Probation and Parole Officer Tom Grant conducted defendant's risk assessment, and on 10 March 2009, testified that defendant's answers generated a score of "1," placing him in a "low" category. Based on this and further discussion, the trial court again struck its findings of fact from the previous SBM eligibility assessment.

In its final assessment, the trial court again made the same findings of fact as it had in the previous assessment, except that the court found that defendant *had not* been convicted of an aggravated offense. During this assessment, the trial court acknowledged that there had been disagreement about whether second-degree rape was an aggravated offense. However, at this time, the court specifically asked the State, "[a]s I understand it, the contention was that the 18-year-old [victim] had some mental instability while there was not even actual physical force with the threat of serious violence to that victim; is that correct?" The State responded, "[t]hat's correct[]" without explicitly objecting to any aspect of the trial court's order. Based on the findings, the trial court ultimately ordered that defendant be enrolled in the SBM program for a period of ten years upon his release from prison. Defendant gave oral notice of appeal from the court's 10 March 2009 order.

## II. ISSUES ON APPEAL

Defendant raises three issues on appeal: (1) whether the trial court erred in finding that defendant required the "highest possible level of supervision and monitoring" and by ordering him to enroll in SBM; (2) whether the SBM statutes are facially unconstitutional and, as applied to defendant, violate both state and federal provisions for vagueness and overbreath; and (3) whether the trial court's order violates defendant's due process rights. In the absence of evidence sufficient to contradict DOC's risk assessment, the State concedes

that the trial court's order requiring that defendant receive the "highest possible level of supervision and monitoring" and enroll in SBM for a period of ten years following his release from prison should be vacated. Based on the analysis below, we reverse the trial court's order.

We also note that the State filed a Petition for Writ of Certiorari concurrent with its brief arguing that defendant should nonetheless be required to enroll in lifetime SBM given that he pled guilty to three counts of second-degree rape of a mentally disabled victim, an aggravated offense as defined by N.C.G.S. § 14-208.6(1a). In light of this Court's decision in *McCravey*, —— N.C. App. at ——, —— S.E.2d at —— (holding as an issue of first impression, that second-degree rape pursuant to N.C.G.S. § 14-27.3(a) is an aggravated offense as defined by the statute), and the extensive discussion of this issue in the trial court, we grant the State's petition for certiorari.

## III.  GROUNDS FOR APPELLATE REVIEW OF DEFENDANT'S APPEAL

**[1]** We note that defendant gave oral notice of appeal at the SBM hearing from the trial court's final order. SBM hearings and proceedings are civil regulatory proceedings; therefore, defendant's oral notice of appeal is insufficient to confer jurisdiction on this Court. *State v. Bare*, —— N.C. App. ——, ——, 677 S.E.2d 518, 527 (2009); *see* · *State v. Brooks*, —— N.C. App. ——, ——, 693 S.E.2d 204, 206 (2010) (holding that oral notice of appeal from an SBM hearing or proceeding is insufficient to confer jurisdiction on this Court, and instructing that a defendant must, instead, give written notice of appeal with the clerk of superior court and serve copies of such notice upon all parties pursuant to N.C.R. App. P. 3(a)). However, in the interest of justice, and to expedite the decision in the public interest, we *ex mero motu* treat defendant's brief as a petition for certiorari and grant said petition to address the merits of defendant's appeal.

## IV.  ANALYSIS

### A.  Standard of Review

The Court recently stated in *State v. Kilby* that "whether '[an] offender requires the highest possible level of supervision and monitoring[,]' is neither clearly a question of fact nor a conclusion of law." *Kilby*, —— N.C. App. at ——, 679 S.E.2d at 432. The Court in *Kilby* held that, on appeal, the trial court's order should be reviewed to ensure that "the determination that 'defendant requires the highest possible

level of supervision and monitoring' 'reflect[s] a correct application of law to the facts found.' " *Id.* (alteration in original).

## B. SBM Hearing Procedure

[2] Where, as in the present case, a defendant has been convicted of a reportable offense pursuant to N.C.G.S. § 14.208.6(4) involving the physical, mental or sexual abuse of a minor and the district attorney has requested that the trial court consider SBM during the defendant's sentencing hearing pursuant to N.C.G.S. § 14.208.40A, the trial court is required to base its determination that defendant enroll in SBM on evidence presented during two phases—a "qualification" phase and a "risk assessment" phase. *Causby*, —— N.C. App. at ——, 683 S.E.2d at 264 (citing *Kilby*, —— N.C. App. at ——, 679 S.E.2d at 433).

During the qualification phase, the Court in *Causby* provides that the following events must occur:

[First,] the "district attorney shall present to the court any evidence" that the defendant falls into one of five categories: "(i) the offender has been classified as a sexually violent predator pursuant to G.S. 14-208.20, (ii) the offender is a recidivist, (iii) the conviction offense was an aggravated offense, (iv) the conviction offense was a violation of G.S. 14-27.2A or G.S. 14-27.4A, or (v) the offense involved the physical, mental, or sexual abuse of a minor." N.C. Gen. Stat. § 14-208.40A(a). [Second,] [u]pon receipt of the evidence from the State and any contrary evidence from the offender, the trial court is required to determine "whether the offender's conviction places the offender" in one of the five categories and to "make a finding of fact of that determination," specifying the category into which the offender falls. N.C. Gen. Stat. § 14-208.40A(b).

*Id.* In the present case, defendant pled guilty to several reportable offenses as defined by N.C.G.S. § 14-208.6(4) and the trial court, after receiving evidence from the State, found that defendant's offense involved the physical, mental, or sexual abuse of a minor. Defendant does not argue that the trial court erred in making this determination during the qualification phase, thus we do not question nor address its accuracy on appeal.

Where the reportable offense involves the physical, mental, or sexual abuse of a minor, and the defendant was not convicted of an aggravated offense, or determined to be a recidivist or a sexually vio-

lent predator, the trial court must order that DOC conduct a Static 99 risk assessment of the defendant. N.C.G.S. § 14-208.40A(d). If the trial court determines that the defendant requires the "highest possible level of supervision and monitoring" based on DOC's Static 99 risk assessment that defendant poses a "high" risk of re-offending, the court is required to order the defendant to enroll in a satellite-based monitoring program for a period of time to be specified by the court. N.C.G.S. § 14-208.40A(e); *Causby*, —— N.C. App. at ——, 683 S.E.2d at 263; *Kilby*, —— N.C. App. at ——, 679 S.E.2d at 434.

In the present case, DOC's Static 99 risk assessment concluded that defendant posed a "low" risk of re-offending. Based solely on DOC's assessment, with no further findings of fact or additional evidence from the State to support its determination, the trial court found that defendant "requires the highest possible level of supervision and monitoring" and ordered defendant to enroll in SBM for a period of ten years following his release from prison. On appeal, the State concedes that the trial court's ruling should be vacated in light of defendant's "low" risk assessment and this Court's recent holdings in *Kilby* and *Causby*. In *Kilby* and *Causby*, our Court held that a DOC risk assessment of "moderate," without any other evidence as to the defendant's risk of recidivism, was insufficient to support the trial court's finding that defendant "requires the highest possible level of supervision and monitoring." *Causby*, —— N.C. App. at ——, 683 S.E.2d at 263; *Kilby*, —— N.C. App. at ——, 679 S.E.2d at 434. Therefore, applying these holdings to the present case, the trial court's determination was clearly erroneous.

Defendant's remaining assignments of error ask this Court to hold the SBM statute unconstitutional on due process grounds for vagueness or lack of statutory notice. Defendant did not raise the constitutionality of the SBM statute before the trial court by asserting an objection on this basis. "Appellate courts will not ordinarily pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the trial court." *State v. Cumber*, 280 N.C. 127, 131-32, 185 S.E.2d 141, 144 (1971). Moreover, we note that this Court has previously rejected similar arguments to those presently raised by defendant where defendant failed to preserve the issue for appeal. *See State v. Morrow*, —— N.C. App. ——, ——, 683 S.E.2d 754, 758-59 (2009) (dismissing defendant's constitutional challenge to the SBM statute where defendant failed to raise the issue in the trial court). As such, we dismiss defendant's remaining assignments of error.

Based on the aforementioned, we reverse the trial court's order requiring defendant to enroll in SBM based on DOC's risk assessment of defendant. However, because we grant the State's petition for writ of certiorari, we remand this matter to the trial court to enter an appropriate order in light of *McCravey*.

Reversed and remanded.

Judge ERVIN concurs.

Judge STROUD concurs in the result with separate opinion.

STROUD, Judge, concurring.

I concur with the result reached by the majority opinion to the extent that it reverses the SBM order and remands to the trial court for entry of an order that defendant enroll in SBM for life under N.C. Gen. Stat. § 14-208.40A(c), as second-degree rape under N.C. Gen. Stat. § 14-27.3(a)(2) is an "aggravated offense" as defined by N.C. Gen. Stat. § 14-208.6(1a). I also agree that the trial court erred in finding that defendant required the "highest possible level of supervision and monitoring" where defendant's Department of Correction ("DOC") risk assessment showed a level of "low" risk and the State presented no additional evidence as to defendant's risk of recidivism. However, I write separately on the issue of whether second-degree rape under N.C. Gen. Stat. § 14-208.6(1a) is an aggravated offense because I believe that mere citation to *State v. McCravey*, —— N.C. App. ——, 692 S.E.2d 409 (2010) is not an adequate rationale for this holding, given the issues raised in this case. In addition, as the SBM statutes were recently enacted and have been the subject of much confusion as to proper application, I believe that a full analysis of the issue may be of some assistance to North Carolina's district attorneys, counsel for defendants, the DOC, and superior court judges, all of whom are working to address SBM cases in accordance with these new SBM statutes. I also agree with the majority that this Court should grant the State's petition for certiorari and review the issue of whether defendant's second-degree rape conviction was an aggravated offense.

The majority holds, and I concur, that second-degree rape under N.C. Gen. Stat. § 14-27.3(a)(2) (2007) is an "aggravated offense" as defined by N.C. Gen. Stat. § 14-208.6(1a) (2009). However, this case raises substantially different issues than *State v. McCravey* as to sec-

ond-degree rape, and the arguments before the trial court all focused upon these very issues. As noted in the majority opinion, the trial court reconsidered whether defendant required SBM based upon commission of an "aggravated offense" or a high risk of recidivism several times, and the fact that defendant's conviction involved a mentally disabled victim was the reason for much of the debate at the hearing. I therefore believe that a more in-depth analysis of the issue is in order.

N.C. Gen. Stat. § 14-27.3(a) defines second-degree rape as follows:

A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:

(1) By force and against the will of the other person; or

(2) Who is mentally disabled, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know the other person is mentally disabled, mentally incapacitated, or physically helpless.

In *McCravey*, this Court held that second-degree rape pursuant to N.C. Gen. Stat. § 14-27.3(a)(1) is an "aggravated offense." —— N.C. App. at ——, 692 S.E.2d at 420. However, this Court has not previously addressed the issue of whether second-degree rape under N.C. Gen. Stat. § 14-27.3(a)(2) is an "aggravated offense." Under subsection (a)(1), "by force and against the will of the other person" is a specific element of the crime, *see* N.C. Gen. Stat. § 14-27.3(a)(1), which satisfies the definition of an "aggravated offense" under N.C. Gen. Stat. § 14-208.6(1a) requiring commission of the sexual act "through the use of force or the threat of serious violence[.]" *Id.*

In *McCravey*, the defendant argued "that the statutory definition of 'aggravated offense' in N.C. Gen. Stat. § 14-208.6(1a) is unconstitutionally vague because it does not specify what constitutes 'use of force[.]' " *Id.* at ——, 692 S.E.2d at 418. This Court considered the context and purpose of the SBM statute and the case law which has defined "the force required in a sexual offense of this nature." *Id.* at ——, 692 S.E.2d at 419-20. In *McCravey*, we held that

The language of N.C. Gen. Stat. § 14-208.6(1a)—'through the *use of force* or the threat of serious violence'—reflects the established definitions as set forth in case law of both physical force and constructive force, in the context of the sexual offenses enu-

merated in N.C. Gen. Stat. §§ 14-27.2, 14-27.3, 14-27.4, and 14-27.5. (emphasis added).

The legislature intended that the same definition of force, as has been traditionally used for second-degree rape, to apply to the determination under N.C. Gen. Stat. § 14-208.6(1a) that an offense was committed by 'the use of force or the threat of serious violence.'

*Id.* Although defendant herein was convicted of rape under subsection (a)(2), based upon sexual intercourse with a "mentally disabled" victim, our courts have previously held that attempted second-degree rape under N.C. Gen. Stat. § 14-27.3(a)(2) is a felony committed "through the use of force or the threat of serious violence[.]" *See* N.C. Gen. Stat. § 14-208.6(1a). In *State v. Holden,* our Supreme Court considered the defendant's argument that a prior conviction of attempted second-degree rape should not be used as an aggravating factor supporting a sentence of death as a conviction of "a felony involving the use of violence [pursuant to] N.C.G.S. § 15A-2000(e)(3) (1988)." 338 N.C. 394, 403, 450 S.E.2d 878, 883 (1994). In *Holden,* the attempted second-degree rape conviction did not specify which subsection of N.C. Gen. Stat. § 14-27.3 formed the basis for defendant's conviction, and the defendant argued that

no evidence was presented from which the jury could find beyond a reasonable doubt that the attempted second-degree rape involved violence or the threat of violence. He argues that because the State only offered proof of his conviction for second-degree rape by presenting the judgment, it failed to present evidence sufficient to prove the aggravating circumstance beyond a reasonable doubt. He reasons that the conviction is insufficient to prove the use of or threatened use of violence because second-degree rape may be predicated on sexual intercourse with a person who is mentally defective, mentally incapacitated, or physically helpless. N.C.G.S. § 14-27.3(a)(2) (1993).

*Id.* at 404, 450 S.E.2d at 883. The Supreme Court rejected this argument, holding that "the crime of attempted rape always involves at least a 'threat of violence' within the meaning of N.C.G.S. § 15A-2000(e)(3)." *Id.* at 405, 450 S.E.2d at 884. The Court went on to explain that

[t]his Court has concluded that for purposes of N.C.G.S. § 15A-2000(e)(3), rape is a felony which has as an element the

use or threat of violence to the person. *State v. Artis*, 325 N.C. 278, 321, 384 S.E.2d 470, 494 (1989) (quoting *McDougall*, 308 N.C. at 18, 301 S.E.2d at 319), *judgment vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604, *on remand*, 327 N.C. 470, 397 S.E.2d 223 (1990). We have further reasoned that where rape is deemed to have as an element the use or threat of violence, the 'felony of attempt to commit rape is therefore by nature of the crime a felony which threatens violence.' *State v. Green*, 336 N.C. 142, 170, 443 S.E.2d 14, 30 (1994) (interpreting military law). Under N.C.G.S. § 15A-2000(e)(3), '[a]ttempting to commit a crime which inherently involves violence obviously constitutes, at least, a 'threat of violence." *Id.* at 169, 443 S.E.2d at 30. Therefore, the judgment showing that the defendant had previously been convicted of attempted second-degree rape was sufficient, standing alone, to require that the trial court submit the aggravating circumstance that the defendant had committed a prior felony involving the use or threat of violence to the person.

For purposes of applying this aggravating circumstance, we reject the notion of any felony which may properly be deemed 'non-violent rape.' We believe that a more enlightened view of this matter has been expressed in the opinions of military courts which have been cited with approval by this Court. Under the Uniform Code of Military Justice, rape is always, and under any circumstances, deemed as a matter of law to be a crime of violence. *United States v. Bell*, 25 M.J. 676 (A.C.M.R. 1987), *rev. denied*, 27 M.J. 161 (C.M.A. 1988); *United States v. Myers*, 22 M.J. 649 (A.C.M.R. 1986), *rev. denied*, 23 M.J. 399 (C.M.A. 1987). As stated in *Myers*, military courts 'specifically reject the oxymoronic term of 'non-violent rape.' The more enlightened view is that rape is always a crime of violence, no matter what the circumstances of its commission.' *Myers*, 22 M.J. at 650. 'Among common misconceptions about rape is that it is a sexual act rather than a crime of violence.' *United States v. Hammond*, 17 M.J. 218, 220 n. 3 (C.M.A. 1984). *Green*, 336 N.C. at 169, 443 S.E.2d at 30. We conclude, for similar reasons, that the crime of attempted rape always involves at least a 'threat of violence' within the meaning of N.C.G.S. § 15A-2000(e)(3).

*Id.* at 404-05, 450 S.E.2d at 883-84. The Court also specifically rejected the argument that sexual intercourse with a person who is mentally defective, incapacitated, or statutorily deemed incapable of consenting does not necessarily involve force or a threat of violence.

The acts of having or attempting to have sexual intercourse with another person who is mentally defective or incapacitated and statutorily deemed incapable of consenting—just as with a person who refuses to consent—involve the 'use or threat of violence to the person' within the meaning of N.C.G.S. § 15A-2000(e)(3). In this context, the force inherent to having sexual intercourse with a person who is deemed by law to be unable to consent is sufficient to amount to 'violence' as contemplated by the General Assembly in this statutory aggravating circumstance. Likewise, the attempt to have sexual intercourse with such a person inherently includes a threat of force sufficient to amount to a 'threat of violence' within the meaning of this aggravating circumstance.

*Id.* at 406, 450 S.E.2d at 884.

Certainly, if the crime of attempted second-degree rape is a crime which "always involves at least a threat of violence" for purposes of an aggravating factor which may support a sentence of death, there is no reason to consider second-degree rape any differently in the context of enrollment in SBM. I therefore concur with the majority in remand of this matter to the trial court for entry of an order that defendant enroll in SBM for life after his release from prison, pursuant to N.C. Gen. Stat. § 14-208.40A(c) (2009).

I therefore concur.