STATE OF NORTH CAROLINA v. JOSHUA NEWTON CLARK

No. COA10-403

(Filed 19 April 2011)

## 1. Confessions and Incriminating Statements— statements to detective—voluntary

The trial court did not err by denying a first-degree rape defendant's motion to suppress statements he made to a detective before he was given *Miranda* warnings. Although defendant was told to wait at a patrol car at the scene, this amounted only to an attempt by officers to control the scene and prevent emotional encounters between a suspect and the victim's family. The detective who took the statements directly and clearly informed defendant that he was not under arrest, defendant repeatedly asked to speak with the detective, and defendant voluntarily accompanied the detective to the sheriff's department.

## 2. Appeal and Error— notice of appeal—satellite-based monitoring—written notice required

An oral notice of appeal was not sufficient to confer appellate jurisdiction to review a satellite-based monitoring (SBM) order because SBM is civil rather than criminal in nature. Although defendant noted his appeal orally rather than in writing, his motion for *certiorari* was granted because of the uncertainty about the proper method of appealing SBM orders at the time.

## 3. Satellite-Based Monitoring— aggravated offense—first-degree rape of child under thirteen

The trial court did not err by ordering defendant to enroll in satellite-based monitoring for the rest of his natural life after he was convicted of the first-degree rape of a child. Although the trial court's determination of an aggravated offense could not be

upheld based on the "child victim" prong of N.C.G.S. § 14-208.6(1a) and the underlying factual scenario could not be considered, the elements of first-degree rape as defined in N.C.G.S. § 14-27.2(a)(1) gave the trial court ample basis for determining that defendant committed an act involving vaginal penetration. Since a child under the age of thirteen is inherently incapable of consenting to sexual intercourse, the rape of such a victim necessarily involves the use of force or the threat of serious violence and the definition of aggravated offense was satisfied by the "violent conduct" prong of N.C.G.S. § 14-208.6(1a).

**4. Constitutional Law— ex post facto—ineffective assistance of counsel—not available for satellite-based monitoring claims**

Ineffective assistance of counsel claims are not available to satellite-based monitoring (SBM) defendants because SBM is civil in nature. Moreover, any *ex post facto* claim defendant's lawyer might have raised would not have been successful for the same reason.

Appeal by Defendant from judgment entered 29 October 2009 by Judge F. Donald Bridges in Burke County Superior Court. Heard in the Court of Appeals 29 September 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Amy Kunstling Irene, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender David W. Andrews, for Defendant.*

ERVIN, Judge.

Defendant Joshua Newton Clark appeals from a judgment sentencing him to a minimum term of 156 months and a maximum term of 197 months imprisonment in the custody of the North Carolina Department of Correction based upon his conviction for first degree rape and an order requiring him to enroll in lifetime satellite-based monitoring (SBM) following his release from prison. After careful consideration of Defendant's challenges to the trial court's judgment and order in light of the record and the applicable law, we find no basis for providing Defendant with any relief on appeal.

## I. Factual Background

### A. Procedural Facts

On 3 May 2006, a warrant for arrest charging Defendant with first degree burglary, first degree rape of a child, and first degree sexual offense against a child was issued. On 5 May 2006, a warrant for arrest charging Defendant with taking indecent liberties with a child was issued. On 5 June 2006, the Burke County grand jury returned bills of indictment charging Defendant with taking indecent liberties with a child and first degree rape.

On 11 May 2009, Defendant filed a motion to suppress certain inculpatory statements that he had made to Detective John R. Huffman of the Burke County Sheriff's Department on 3 May 2006. Defendant sought suppression of these statements on the grounds that they stemmed from a violation of his right to the assistance of counsel and in the absence of a valid waiver of his right to be free from compelled self-incrimination. Defendant's suppression motion was heard before Judge James E. Hardin, Jr., at the 11 May 2009 session of the Burke County Superior Court. At the conclusion of the hearing, Judge Hardin orally denied Defendant's suppression motion. On 5 November 2009,[1] Judge Hardin entered a written order that contained extensive findings of fact and conclusions of law denying Defendant's suppression motion.

In light of Judge Hardin's decision to deny his suppression motion and while reserving his right to "appeal specified rulings of the trial court as specified in the plea proceedings," Defendant entered an *Alford* plea to first degree rape at the 26 October 2009 criminal session of the Burke County Superior Court. In return for Defendant's plea, the State voluntarily dismissed the indecent liberties charge.[2] At the sentencing hearing, the trial court found that Defendant had no prior record points and should be sentenced as a Level I offender, that he had "voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer [] at an early stage of the criminal process," and that "the factors in mitigation ouweigh[ed] the factors in aggravation," so that a "mitigated sentence [was] justified." As a

---

1. Although Judge Hardin's order was dated 25 July 2009, it was not filed until 5 November 2009.

2. The State also dismissed the first degree sexual offense and first degree burglary charges that had been originally asserted against Defendant on 8 June 2006, with this dismissal predicated on the fact that the grand jury had indicted Defendant for taking indecent liberties with a child and first degree rape of a child.

STATE v. CLARK

[211 N.C. App. 60 (2011)]

result, the trial court ordered that Defendant be imprisoned for a minimum term of 156 months and a maximum term of 197 months in the custody of the North Carolina Department of Correction.

After the imposition of judgment, the trial court conducted a hearing for the purpose of determining, among other things, whether Defendant should be required to enroll in SBM. At the conclusion of the SBM hearing, the trial court found that Defendant had been convicted of an offense against a minor as defined in N.C. Gen. Stat. § 14-208.6(1i) and a sexually violent offense as defined in N.C. Gen. Stat. § 14-208.6(5), that the conviction offense was an aggravated offense as defined in N.C. Gen. Stat. § 14-208.6(1a), and that Defendant should be required to enroll in SBM "for [his] natural life." Defendant orally noted an appeal to this Court after the entry of the trial court's judgment. In addition, Defendant has petitioned this Court for the issuance of a writ of *certiorari* directed to the trial court's SBM order on 4 June 2010.

## II. Substantive Facts

### A. State's Evidence at the Suppression Hearing

At the suppression hearing, the State presented the testimony of Detective Huffman. Detective Huffman testified that, on 2 May 2006, he received a call reporting that a sexual assault had been committed against a child and responded to the home where the child resided. As Detective Huffman arrived at the child's residence, Defendant, who was standing in the driveway by himself, inquired if Detective Huffman was the detective responsible for handling the case. After Detective Huffman responded in the affirmative, Defendant stated that he needed to speak with Detective Huffman in order "to make some wrongs right." Although Detective Huffman told Defendant that he would need to make contact with the child first, he assured Defendant that he would speak with him after that had been done.

Detective Huffman remained in the child's house for approximately thirty to forty-five minutes. As Detective Huffman exited the residence, Defendant approached Detective Huffman for a second time and again stated that he needed to speak with Detective Huffman. Detective Huffman "explained to [Defendant] that [he] was not going to discuss the case . . . in the victim's driveway," but "would be more than happy to talk to [Defendant] at the sheriff's office." Detective Huffman offered Defendant a ride to the Burke County Sheriff's Department in his vehicle, an unmarked Crown Victoria. As an alternative, Detective Huffman told Defendant "that he could call

family or friends to get . . . a ride." Defendant elected to ride with Detective Huffman.

As the two men traveled to the Sheriff's Department, Defendant rode in the front seat of Detective Huffman's vehicle without being subject to any restraints. During this drive, which lasted approximately fifteen to twenty minutes, Detective Huffman and Defendant refrained from discussing the case. Upon arriving at the Sheriff's Department, Defendant entered the building through the back door and followed Detective Huffman to an interview room.

After the two men reached the interview room, Detective Huffman asked Defendant what "wrongs he needed to make right." At this time Defendant made the inculpatory statements which underlie his motion to suppress. While interacting with Defendant on 2-3 May 2006, Detective Huffman explicitly informed Defendant that he was not under arrest.

Q.: Did you tell [Defendant] prior to getting in the car, or while he was in the car that he was not under arrest?

A.: Yes.

Q.: Do you recall how many times you told him that?

A.: Multiple, he stated he understood and he wanted to make wrongs right.

Detective Huffman was wearing blue jeans and a sweater, had no visible firearm or other weapon in his possession, and did not have a visible police identification badge or handcuffs on his person.

### B. Defendant's Evidence at the Suppression Hearing

At the suppression hearing, Defendant testified that he went to the child's home at approximately 11:00 p.m. on 2 May 2009. At that time, Defendant noticed a Sheriff's Department car in the driveway. Defendant pulled into the driveway, exited his vehicle, walked up to the front door, and knocked. The child's father, who "was irate," answered the door. A law enforcement officer approached Defendant and asked Defendant to "come with him." Defendant complied with the officer's request. Defendant further testified that he believed the officer "was trying to get me away from the scene." Defendant stood with or around one or more police officers for approximately an hour before Detective Huffman arrived and waited for an additional twenty to thirty minutes while Detective Huffman was inside the

child's residence. At some point during this interval, Defendant attempted to approach the child's sister, who was his girlfriend, and was instructed to "come back" by a nearby officer. Defendant testified that "I never felt like I was able to [leave the scene]," that, "I have never really been in trouble," and that "I am pretty intimidated by the police."

## III. Legal Analysis

### A. Motion to Suppress

[1] On appeal, Defendant contends that Judge Hardin erred by denying his suppression motion on the grounds that he had not been provided with, and appropriately waived, the necessary *Miranda* warnings. In challenging the denial of his suppression motion, Defendant argues that Judge Hardin failed to make adequate findings of fact as required by N.C. Gen. Stat. § 15A-977(d) because he did not resolve the conflict in the evidence arising from Defendant's testimony that he was moved to a patrol car and ordered to remain there after he attempted to approach the alleged victim's father and to talk to his girlfriend and that these deficiencies in Judge Hardin's findings prejudiced him. Defendant's argument lacks merit.

In reviewing a trial court's order ruling on a motion to suppress, we are " 'strictly limited to determining whether the trial [court's] underlying findings of fact are supported by competent evidence[.]' " *State v. Ortez*, 178 N.C. App. 236, 243-44, 631 S.E.2d 188, 194-95 (2006) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)), *disc. review denied*, 361 N.C. 434, 649 S.E.2d 642 (2007). Assuming that the trial court's factual findings have adequate evidentiary support, they are conclusive for purposes of appellate review even if the record contains conflicting evidence. *State v. Crudup*, 157 N.C. App. 657, 659, 580 S.E.2d 21, 23 (2003) (citing *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001)). In addition, any findings of fact which the defendant fails to challenge on appeal are binding for purposes of appellate review. *State v. Campbell*, 188 N.C. App. 701, 704, 656 S.E.2d 721, 724 (citing *State v. Lacey*, 175 N.C. App. 370, 376, 623 S.E.2d 351, 355 (2006)), *app. dismissed*, 362 N.C. 364, 664 S.E.2d 311 (2008). " 'Once [we] conclude[] that the trial court's findings of fact are supported by the evidence, [our] next task "is to determine whether the trial court's conclusion[s] of law [are] supported by the findings." ' " *Id.* (quoting *State v. Brewington*, 352 N.C. 489, 498-99, 532 S.E.2d 496, 502 (2000), *cert. denied*, 531 U.S. 1165, 148 L. Ed. 2d 992, 121 S. Ct. 1126 (2001)). A trial court's determinations concerning whether a person is in custody and whether a custodial interrogation

has occurred are conclusions of law that are "fully reviewable on appeal." *Buchanan*, 353 N.C. at 336, 543 S.E.2d at 826 (citing *State v. Greene*, 332 N.C. 565, 577, 422 S.E.2d 730, 737 (1992)). " '[T]he trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found.' " *Id.* (quoting *State v. Golphin*, 352 N.C. 364, 409, 533 S.E.2d 168, 201 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305, 121 S. Ct. 1379 (2001)). Thus, "we review the trial court's determination that [D]efendant was not entitled to *Miranda* warnings under a *de novo* [standard of] review." *Crudup*, 157 N.C. App. at 659, 580 S.E.2d at 23.

In his order denying Defendant's suppression motion, Judge Hardin found as a fact:

> 2. That on May 2, 2006 between 11:00-11:30, Detective J.R. Huffman responded to a call for service [at a location in][3] Morganton, Burke County, North Carolina. Detective Huffman was met by Sergeant [Robert] Powell of the Burke County Sheriff's Office briefly describing an alleged sexual assault of [the child] and that [the child] was being taken to Grace Hospital. Detective Huffman encountered the Defendant, whereupon the defendant asked if he (Detective Huffman) was the detective working the case, that he (the Defendant) "needed to talk to him (Detective Huffman) and make some wrongs, right." Detective Huffman was at the scene, and inside the residence, for approximately 30-40 minutes. During this time, he had no contact with the Defendant. As Detective Huffman was [exiting] the residence, the Defendant said that he "wanted to talk to the detective." Detective Huffman indicated he would talk with the defendant at the office, but because he smelled alcohol on the Defendant, he could have a family member or friend bring the Defendant to the office or he (the Defendant) could ride with Detective Huffman, who was in an unmarked car, and who had no badge, gun or handcuffs showing. The Defendant decided to ride with Detective Huffman. The Defendant was not placed in handcuffs and was told specifically that he was not under arrest. While in route to the Sheriff's Office, the Defendant repeated that "(he) wanted to make wrongs, right."

---

3. The material set out in parenthesis in our quotation from Judge Hardin's findings of fact was set out in brackets in the original order. The material set out in brackets in our quotation from Judge Hardin's factual findings represents certain minor modifications that we have made to the quoted findings of fact for the purpose of consistency with the remainder of our opinion, the protection of the child's privacy, or for similar reasons.

3. That at around 12:30-1:00 a.m. on May 3, 2006 and upon arrival at the Sheriff's Office, the Defendant was taken to an interview room where he made various oral statements that were later memorialized in writing. At this stage of the investigation of this case, there is no evidence before the Court to suggest or show that a warrant for the Defendant's arrest had been issued. That at approximately 11:00 p.m. on May 3, 2006, the Defendant voluntarily and "on (his) own accord" went to the Burke County Sheriff's Office. The Defendant was told "that he (the Defendant) did not have to talk with me (Detective Huffman)["] and that "you do not have to be here."

4. That the Defendant, according to Detective Huffman, appeared to be relaxed, was not under arrest, was not hand-cuffed, and was not told that he could not leave. . . .

5. . . . Following the Defendant's review of his written state-ment, the Defendant said "(d)o I need a lawyer?" Detective Huffman responded by saying that he could not give the Defendant legal advice. No[] effort was made to get a lawyer for the Defendant, but there is also no evidence that the Defendant was asked any additional questions. The interview concluded with the departure of Detective Huffman[,] who then stepped outside the interview room to prepare the subject arrest warrants which were to be considered by a Magistrate. While this was going on, the Defendant remained in the interview room, free to move and without handcuffs and with the door open. Once the warrants were completed, the Defendant was presented to the Magistrate.

6. Prior to the Defendant making oral and written statements to Detective Huffman, the Defendant was not given his Miranda warnings. Up to the point that the Defendant made these state-ments, no decision as to the Defendant's arrest on the subject charges had been made. Throughout the time the Defendant made these statements, he remained free to leave, was not placed in handcuffs or any other type of restraint, had not been fingerprinted or asked to submit to any type [of] non-testimonial evidence collection. Only after the Defendant made the oral and written statements was a decision made to charge him with the subject violations.

Based upon these findings of fact, Judge Hardin concluded as a matter of law, among other things, that "the requirements of *Miranda v.*

*Arizona* [were] not applicable to the subject statements of the Defendant because he was not in custody for purposes of the rule in that the Defendant was not under formal arrest and/or did not have his personal movement restrained to a degree associated with formal arrest."

A suspect is entitled to receive *Miranda* warnings in the event that he or she is "subjected to police interrogation while in custody at the station or otherwise deprived of [his or her] freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 477, 16 L. Ed. 2d 694, 725, 86 S. Ct. 1602, 1629 (1966); *see also Crudup,* 157 N.C. App. at 659, 580 S.E.2d at 24 (stating that " '*Miranda* warnings are required only when a defendant is subjected to custodial interrogation' ") (quoting *State v. Patterson,* 146 N.C. App. 113, 121, 552 S.E.2d 246, 253, *disc. review denied,* 354 N.C. 578, 559 S.E.2d 549 (2001)). "[P]olice officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect." *Oregon v. Mathiason,* 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719, 97 S. Ct. 711, 714 (1977) *(per curiam).* Instead, "[t]he proper inquiry for determining whether a person is 'in custody' for purposes of *Miranda* is 'based on the totality of the circumstances, whether there was a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." ' " *State v. Barden,* 356 N.C. 316, 337, 572 S.E.2d 108, 123 (2002) (quoting *Buchanan,* 353 N.C. at 339, 543 S.E.2d at 828), *cert. denied,* 538 U.S. 1040, 155 L. Ed. 2d 1074, 123 S. Ct. 2087 (2003). The extent to which Defendant was in custody for *Miranda* purposes depends on the objective circumstances surrounding his interactions with law enforcement officers, "not on the subjective views harbored by . . . [Defendant]." *Stansbury v. California,* 511 U.S. 318, 323, 128 L. Ed. 2d 293, 298, 114 S. Ct. 1526, 1529 (1994) *(per curiam).* As a result, the ultimate issue before Judge Hardin in the court below and before us on appeal is whether a reasonable person in Defendant's position would have believed that he was under arrest or was restrained in such a way as to necessitate the provision of *Miranda* warnings.

In *State v. Waring,* —— N.C. ——, ——, 701 S.E.2d 615, 633 (2010), the Supreme Court highlighted several factors that are appropriately considered in determining whether a particular suspect was in "custody" for *Miranda* purposes:

> This Court has considered such factors as whether a suspect
> is told he or she is free to leave, whether the suspect is hand-

cuffed, whether the suspect is in the presence of uniformed officers, and the nature of any security around the suspect[.]

(Internal citations omitted). In *Waring*, the defendant "was told he was being detained until detectives arrived but that he was not under arrest. When he was again advised by the detectives upon their arrival that he was not under arrest, defendant voluntarily agreed to accompany them to the police station, affirmatively telling them he was 'anxious' to talk with them and answer their questions." *Id.* The Supreme Court reasoned that, although the defendant was initially informed by law enforcement officers that he was being " 'detained' while he waited on the curb for the detectives to arrive," "any custody associated with the detention ended when defendant left [the detaining officer] and voluntarily accompanied [the detectives]" to the police station. *Id.* at ——, 701 S.E.2d at 634. In holding that a reasonable person in the defendant's position would not have believed that he was under arrest or subject to such restraint in his movements as to require the administration of *Miranda* warnings, the Supreme Court emphasized that "any conflict engendered in defendant's mind by being told at the outset that he was being detained pending the investigators' arrival necessarily dissipated when those investigators appeared and specifically told defendant he was not under arrest." *Id.*

At the suppression hearing, Defendant did not testify that he was ever explicitly informed by any law enforcement officer that he had been detained. Instead, Defendant merely claims that the fact that he was moved to a patrol car and instructed to remain there when he came in contact with the child's father and that he was told to "come back and stay" at the location of the patrol car when he attempted to talk to his girlfriend, the child's sister, was tantamount to a formal arrest sufficient to trigger the necessity for the administration of *Miranda* warnings and that Judge Hardin's failure to address this issue in his findings of fact constituted an error of law. However, even if Judge Hardin had made factual findings consistent with Defendant's testimony, such findings would not have established that Defendant was in "custody" for *Miranda* purposes. Instead of placing Defendant in detention, the officers' actions amounted to nothing more than an attempt to control the scene and prevent emotional encounters between a suspect and members of the alleged victim's family. Moreover, even if Defendant was detained for *Miranda* purposes while awaiting Detective Huffman's emergence from the child's house, *Waring* establishes that Defendant's statements to Detective Huffman remain untainted as the result of subsequent events. The

testimony of Detective Huffman, upon which Judge Hardin based his findings of fact, demonstrates that Detective Huffman directly and clearly informed Defendant that he was not under arrest, that Defendant repeatedly requested to speak with Detective Huffman, and that Defendant voluntarily accompanied Detective Huffman to the Burke County Sheriff's Department. As a result, even if Judge Hardin erred by failing to make factual findings addressing Defendant's claim that he was placed in "custody" while Detective Huffman was inside the alleged victim's residence, any such error did not prejudice Defendant since the inclusion of findings of fact based on Defendant's testimony would not have established that his statements to Detective Huffman resulted from an impermissible custodial interrogation. Thus, we must reject Defendant's sole challenge to the trial court's judgment.

### B. Satellite-Based Monitoring

#### 1. Appealability Issues

**[2]** Secondly, Defendant challenges the validity of the trial court's decision requiring him to enroll in lifetime SBM. In evaluating the lawfulness of a trial court order requiring a convicted defendant to enroll in SBM, " 'we review the trial court's findings of fact to determine whether they are supported by competent record evidence, and we review the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found.' " *State v. McCravey,* —— N.C. App. ——, ——, 692 S.E.2d 409, 418 (quoting *State v. Kilby,* 198 N.C. App. 363, 367, 679 S.E.2d 430, 432 (2009)), *disc. review denied,* 364 N.C. 438, 702 S.E.2d 506 (2010). Prior to addressing the merits of Defendant's claim, however, we must first determine if his appeal from the trial court's SBM order is properly before this Court.

We have previously held that, since an SBM-related proceeding is civil rather than criminal in nature, an " 'oral notice pursuant to N.C.R. App. P. 4(a)(1) is insufficient to confer jurisdiction on this Court' in a case arising from a trial court order requiring a litigant to enroll in SBM." *State v. Cowan,* —— N.C. App. ——, ——, 700 S.E.2d 239, 241 (2010) (quoting *State v. Brooks,* —— N.C. App. ——, ——, 693 S.E.2d 204, 206 (2010)). Instead, a defendant seeking to challenge an order requiring his or her enrollment in SBM must give written notice of appeal in accordance with N.C.R. App. P. 3(a) in order to properly invoke this Court's jurisdiction. *Brooks,* —— N.C. App. at ——, 693 S.E.2d at 206. According to N.C.R. App. P. 3(a), an appealing party

**STATE v. CLARK**

[211 N.C. App. 60 (2011)]

must "file[] [a written] notice of appeal with the clerk of superior court and serve[] copies thereof upon all other parties" as a precondition for challenging such an order on appeal. In view of the fact that Defendant noted his appeal from the trial court's SBM order orally, rather than in writing, he failed to properly appeal the trial court's SBM order to this Court, necessitating the dismissal of his appeal. *See Cowan*, —— N.C. App. at ——, 700 S.E.2d at 241 (explaining that a failure to give proper notice of appeal requires dismissal of the appellant's appeal because " '[t]he provisions of [N.C.R. App. P. 3] are jurisdictional' ") (quoting *Stephenson v. Bartlett*, 177 N.C. App. 239, 241, 628 S.E.2d 442, 443, *disc. review denied*, 360 N.C. 544, 635 S.E.2d 58 (2006)).

In recognition of his failure to file a written notice of appeal from the trial court's SBM order, Defendant petitioned for the issuance of a writ of *certiorari* authorizing appellate review of his SBM-related claims on 3 June 2010. "[A] writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C.R. App. P. 21(a)(1). We conclude that we should, in the exercise of our discretion, issue the requested writ of *certiorari* in order to permit review of Defendant's challenge to the trial courts SBM order. Given that this Court did not hold that a written, rather than an oral, notice of appeal was required in order to appeal from an SBM-related order until approximately seven months after Defendant's SBM hearing, "Defendant would have needed a considerable degree of foresight in order to understand that an oral notice of appeal pursuant to N.C.R. App. P. 4(a)(1) was ineffective" at the time the trial court entered its SBM-related order. *Cowan*, —— N.C. App. at ——, 700 S.E.2d at 242. In view of the uncertainty surrounding the proper method of seeking appellate review of trial court SBM orders that existed at the time that Defendant noted his appeal, it would be unfair for us to refuse to consider Defendant's challenge to the trial court's SBM order solely because he failed to file a written notice of appeal pursuant to N.C.R. App. P. 3(a). As a result, "[i]n the interest of justice, and to expedite the decision in the public interest," we grant Defendant's petition for writ of *certiorari* for the purpose of considering his challenges to the trial court's SBM order on their merits. *Brooks*, —— N.C. App. at ——, 693 S.E.2d at 206.

## 2. Aggravated Offense

[3] On appeal, Defendant contends that the trial court erred by ordering him to enroll in lifetime SBM based on a finding that he had

been convicted of an "aggravated offense." More specifically, Defendant contends that he could not properly be required to enroll in lifetime SBM pursuant to N.C. Gen. Stat. § 14-208.40A(c) because first degree rape of a child in violation of N.C. Gen. Stat. § 14-27.2(a)(1) is not an "aggravated offense" as that term is defined in N.C. Gen. Stat. § 14-208.6(1a).

N.C. Gen. Stat. § 14-208.40A(c) provides that a trial court shall require an offender to enroll in lifetime SBM "[i]f the court finds that the offender has been classified as a sexually violent predator, is a recidivist, has committed an aggravated offense, or was convicted of [violating N.C. Gen. Stat. § 14-27.2A or N.C. Gen. Stat. § 14-27.4A.]" N.C. Gen. Stat. § 14-208.6(1a) defines an "aggravated offense" as "any criminal offense that includes either of the following: (i) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim of any age through the use of force or the threat of serious violence; or (ii) engaging in a sexual act involving vaginal, anal, or oral penetration with a victim who is less than 12 years old." In light of the plain language of N.C. Gen. Stat. § 14-208.6(1a), "it is clear that an 'aggravated offense' is an offense including: first, a sexual act involving vaginal, anal or oral penetration; and second, either (1) that the victim is less than [12] years old or (2) the use of force or the threat of serious violence against a victim of any age." *State v. Davison*, —— N.C. App. ——, ——, 689 S.E.2d 510, 515 (2009), *disc. review denied*, —— N.C. ——, 703 S.E.2d 738 (2010). In *Davison*, we held that, in determining whether a defendant's conviction offense qualifies as an "aggravated offense" for purposes of N.C. Gen. Stat. § 14-208.40A, the trial court is only permitted to consider the elements of the offense for which the defendant has been convicted and "is not to consider the underlying factual scenario giving rise to the conviction." *Id.* at ——, 689 S.E.2d at 517. As a result, "in order for a trial court to conclude that a conviction offense is an 'aggravated offense' under [N.C. Gen. Stat. § 14-208.40A,] . . . the elements of the conviction offense must 'fit within' the statutory definition of 'aggravated offense.' " *State v. Phillips*, —— N.C. App. ——, ——, 691 S.E.2d 104, 106 (citing *State v. Singleton*, —— N.C. App. ——, ——, 689 S.E.2d 562, 569, *disc. review improvidently allowed*, 364 N.C. 418, 700 S.E.2d 226 (2010)), *disc. review denied*, 364 N.C. 439, 702 S.E.2d 794 (2010). In comparing the statutory definition of an "aggravated offense," as set out in N.C. Gen. Stat. § 14.208.6(1a), with the elements required to be proven to obtain a conviction under N.C. Gen. Stat. § 14.27.2(a)(1) for first degree rape, it is clear that first degree rape "fit[s] within" the

definition of "aggravated offense" as required by *Davison* and its progeny. *Id.*

N.C. Gen. Stat. § 14-27.2(a)(1) provides that:

A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

(1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]

Unlike the various conviction offenses at issue in the cases upon which Defendant relies, *Davison,* —— N.C. App. at ——, 689 S.E.2d at 516 (taking indecent liberties with a child); *Singleton,* —— N.C. App. at ——, 689 S.E.2d at 566-67 (taking indecent liberties with a child); *Phillips,* —— N.C. App. at ——, 691 S.E.2d at 107 (felonious child abuse by means of the commission of any sex act); *Brooks,* —— N.C. App. at ——, 693 S.E.2d at 207 (sexual battery), as well as other cases recently decided by this Court, *State v. Treadway,* —— N.C. App. ——, ——,702 S.E.2d 335, 347 (2010) (first degree sexual offense), *State v. Santos,* —— N.C. App. ——, ——, —— S.E.2d ——, ——, 2011 N.C. App. LEXIS 459, at *9-*14 (2011) (first degree sexual offense), obtaining a first degree rape conviction pursuant to N.C. Gen. Stat. § 14-27.2(a)(1) requires proof that a defendant "engage[d] in vaginal intercourse" with his or her victim, as compared to some other form of inappropriate contact. N.C. Gen. Stat. § 14-27.2(a)(1). In other words, anyone found guilty of first degree rape in violation of N.C. Gen. Stat. § 14-27.2(a)(1) has necessarily "[engaged] in a sexual act involving vaginal, anal, or oral penetration," N.C. Gen. Stat. § 14-208.6(1a), based solely on an analysis of the elements of the conviction offense.[4]

The fact that a defendant has been convicted of first degree rape under N.C. Gen. Stat. § 14-27.2(a)(1) does not, however, support an inference that the victim was under the age of 12 as required by N.C. Gen. Stat. § 14-208.6(1a)(ii), since one commits first degree rape whenever he or she engages in vaginal intercourse with "a child under the age of 13." N.C. Gen. Stat. § 14-27.2(a)(1). Thus, as Defendant correctly points out, a trial court cannot determine whether the victim of a first degree rape in violation of N.C. Gen. Stat.

---

4. The same is not necessarily true with respect to a conviction for first degree sexual offense in violation of N.C. Gen. Stat. § 14-27.4(a)(1), since an individual can be convicted of first degree sexual offense on the basis of cunnilingus, which does not require proof of penetration. *State v. Ludlum,* 303 N.C. 666, 669, 281 S.E.2d 159, 161 (1981) (stating that "[w]e do not agree, however, that penetration is required before cunninlingus, as that word is used in the statute, can occur").

§ 14-27.2(a)(1) was under the age of 12 without engaging in an impermissible consideration of the underlying factual scenario giving rise to the conviction offense. *See Phillips*, —— N.C. App. at ——, 691 S.E.2d at 108 (stating that, "[s]ince 'a child less than 16 years' is not necessarily also 'less than 12 years old,' without looking at the underlying facts, a trial court could not conclude that a person convicted of felonious child abuse by the commission of any sexual act committed that offense against a child less than 12 years old"); *Treadway*, —— N.C. App. at ——, 702 S.E.2d at 33-34 (holding that the record did not support a finding that a defendant convicted of first degree sexual offense in violation of N.C. Gen. Stat. § 14-27.4(a)(1) had committed an "aggravated offense," because a conviction for first degree sexual offense only requires that the victim be under the age of 13, guilt of "[a]n aggravated offense requires that the child be 'less than 12 years old,'" and "a child under the age of 13 is not necessarily also a child less than 12 years old") (internal citations omitted); *Santos*, —— N.C. App. at ——, —— S.E.2d ——, 2011 N.C. App. LEXIS 459, at *12-*13 (2011) (citing *Treadway* for the proposition that first degree sexual offense is not an "aggravated offense"). In sum, the trial court's determination that Defendant was subject to lifetime SBM based on his conviction for an "aggravated offense" cannot be upheld on the basis of the "child victim" prong of the statutory definition set out in N.C. Gen. Stat. § 14-208.6(1a).

As we previously noted, however, one commits an "aggravated offense" if he or she (1) engages in a sexual act involving vaginal, anal, or oral penetration, with either (2a) a victim less than 12 years old **or,** (2b) a victim of any age through the use of force or the threat of serious violence. N.C. Gen. Stat. § 14-208.6(1a). Based only on the fact that Defendant was convicted of first degree rape in violation of N.C. Gen. Stat. § 14-27.4(a)(1) and without making any reference to the factual scenario giving rise to Defendant's rape conviction, it is clear from the mere fact of his conviction that Defendant engaged in vaginal intercourse with the victim. In addition, because we believe that the act of vaginal intercourse with a person under the age of 13 necessarily involves the use of force or the threat of serious violence, we find that first degree rape "fit[s] within" the definition of "aggravated offense" as is required by *Davison* and its progeny.

In *State v. Oxendine*, —— N.C. App. ——, 696 S.E.2d 850 (2010), this Court accepted the State's argument that "defendant should . . . be required to enroll in lifetime SBM given that he pled guilty to three counts of second-degree rape of a mentally disabled victim, an aggra-

**STATE v. CLARK**

[211 N.C. App. 60 (2011)]

vated offense as defined by [N.C. Gen. Stat.] § 14-208.6(1a)" and "remand[ed] this matter to the trial court to enter an appropriate order in light of [*State v. McCravey*, —— N.C. App. ——, 692 S.E.2d 409 (2010)]." *Oxendine*, ——N.C. App. at ——, 696 S.E.2d at 853, 853-55. As the Supreme Court has noted, "rape is a felony which has as an element the use or threat of violence[.]" *State v. Holden*, 338 N.C. 394, 404, 450 S.E.2d 878, 883-84 (1994) (citations omitted).[5] In reaching this conclusion, the Supreme Court explicitly "reject[ed] the notion" of " 'non-violent rape' " and endorsed the "more enlightened view . . . expressed in the opinions of military courts which have been cited with approval by this Court." *Id.* at 405, 450 S.E.2d at 884.

> Under the Uniform Code of Military Justice, rape is always, and under any circumstances, deemed as a matter of law to be a crime of violence. *United States v. Bell*, 25 M.J. 676 (A.C.M.R. 1987), *rev. denied*, 27 M.J. 161 (C.M.A. 1988); *United States v. Myers*, 22 M.J. 649 (A.C.M.R. 1986), *rev. denied*, 23 M.J. 399 (C.M.A. 1987). As stated in *Myers*, military courts "specifically reject the oxymoronic term of 'non-violent rape.' The more enlightened view is that rape is always a crime of violence, no matter what the circumstances of its commission." *Myers*, 22 M.J. at 650. "Among common misconceptions about rape is that it is a sexual act rather than a crime of violence." *United States v. Hammond*, 17 M.J. 218, 220 n.3 (C.M.A. 1984).

*Id.* (quoting *State v. Green*, 336 N.C. 142, 169, 443 S.E.2d 14, 30, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547, 115 S. Ct. 642 (1994)). Thus, "[t]he act[] of having . . . sexual intercourse with another person who is mentally defective or incapacitated and statutorily deemed incapable of consenting—just as with a person who refuses to consent-involve[s] the 'use or threat of violence.' " *Id.* at 406, 450 S.E.2d at 884. Put another way, an act of sexual intercourse with a person deemed incapable of consenting as a matter of law is a violent act. *Id.* As a result, since a child under the age of 13 is inherently incapable of consenting to sexual intercourse, the rape of such a victim necessarily involves "the use of force or the threat of serious violence[.]" N.C. Gen. Stat. § 14-208.6(1a).

Thus, based on an examination of the elements of the offense of first degree rape as defined in N.C. Gen. Stat. § 14-27.2(a)(1), the trial court had ample basis for determining that Defendant committed an

---

5. The logic adopted in our opinion with respect to this issue is essentially the same as that advocated by Judge Stroud in her concurring opinion in *Oxendine*.

act involving vaginal penetration. Additionally, in light of *Holden*, it is clear that, without considering the facts of the underlying event giving rise to Defendant's conviction, the trial court had ample basis for concluding that Defendant engaged in "a sexual act involving . . . the use of force or the threat of serious violence[.]" N.C. Gen. Stat. § 14-208.6(1a). Since neither *Treadway* nor *Santos* addressed the extent to which the defendant was subject to lifetime SBM on the basis of the "violent conduct" prong of N.C. Gen. Stat. § 14-208.6(1a), and since guilt of first degree sexual offense in violation of N.C. Gen. Stat. § 14-27.4(a)(1) does not require proof of an act of "vaginal, anal, or oral penetration," N.C. Gen. Stat. § 14-208.6(1a), those decisions do not control the outcome in this case. Instead, our decision with respect to this issue is controlled by *Oxendine*, in which we held that a defendant convicted of any rape was subject to lifetime SBM on the basis of the "violent conduct" prong of N.C. Gen. Stat. § 14-208.6(1a). Since the essential elements of first degree rape in violation of N.C. Gen. Stat. § 14-27.2(a)(1) "fit within" the statutory definition of an "aggravated offense" set out in N.C. Gen. Stat. § 14-208.6(1a), we hold that the trial court did not err by ordering Defendant to enroll in SBM for the remainder of his natural life pursuant to N.C. Gen. Stat. § 14-208.40A.

### 3. Ineffective Assistance of Counsel

[4] Finally, Defendant contends that he was denied the effective assistance of counsel in violation of the United States Constitution and the North Carolina Constitution. U.S. Const. amend. VI; N.C. Const. art. I, § 23. More specifically, Defendant contends that he received deficient representation because his trial counsel failed to challenge the trial court's SBM order on the grounds that it violated the federal and state constitutional prohibitions against the enactment of *ex post facto* laws. U.S. Const. art. I, § 10, cl. 1; N.C. Const. art. I, § 16. Defendant is not entitled to relief on appeal based upon this contention.

We first note that this ineffective assistance claim is simply not available to Defendant. "[I]neffective assistance of counsel [claims are] available only in criminal matters." *State v. Wagoner*, —— N.C. App. ——, ——, 683 S.E.2d 391, 400 (2009), *aff'd* 364 N.C. 422, 700 S.E.2d 222 (2010). The SBM statutes constitute a civil, regulatory regime, rather than a criminal punishment. *State v. Bowditch*, 364 N.C. 335, 352, 700 S.E.2d 1, 13 (2010) (stating that "[t]he SBM program . . . was enacted with the intent to create a civil, regulatory scheme to protect citizens of our state from the threat posed by the recidivist

tendencies of convicted sex offenders" and "neither the purpose nor effect of the SBM program negates the legislature's civil intent[,]" so that "subjecting defendants to the SBM program does not violate the Ex Post Facto Clauses of the state or federal constitution"). As a result, since an SBM proceeding is not criminal in nature, defendants required to enroll in SBM are not entitled to challenge the effectiveness of the representation that they received from their trial counsel based on the right to counsel provisions of the federal and state constitutions. *Wagoner*, —— N.C. App. at ——, 683 S.E.2d at 400.

Moreover, even if Defendant were entitled to raise an ineffectiveness claim, that claim would not be successful. A successful ineffective assistance of counsel claim requires a demonstration that the representation that the defendant received "fell below an objective standard of reasonableness" and that the "deficiencies in counsel's performance [were] prejudicial[.]" *Strickland v. Washington*, 466 U.S. 668, 688, 692, 80 L. Ed. 2d 674, 693, 696, 104 S. Ct. 2052, 2064, 2067 (1984). In other words, a mere demonstration that a defendant's trial counsel provided deficient representation is insufficient to support an award of relief. *Id.* at 693, 80 L. Ed. 2d at 697, 104 S. Ct. at 2067. Instead, Defendant must also show that there is a "reasonable probability" that, had his trial counsel challenged the trial court's SBM order on *ex post facto* grounds, "the result of the proceeding would have been different." *Id.* at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. In light of the Supreme Court's recent *Bowditch* decision, it is clear that any *ex post facto* challenge that Defendant might have advanced in opposition to the trial court's SBM order would not have been successful. Thus, for all of these reasons, Defendant's ineffective assistance of counsel claim lacks merit.

## IV. Conclusion

Thus, for the reasons set forth above, we conclude that Judge Hardin did not err by denying Defendant's suppression motion and that the trial court did not err by ordering Defendant to enroll in SBM for the remainder of his natural life. As a result, the trial court's judgment and the SBM order should not, and will not be, disturbed on appeal.

NO ERROR.

Judges BRYANT and STEELMAN concur.