An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-172

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

STATE OF NORTH CAROLINA

    v.

EARL CHERRY

Nash County
No. 11 CRS 052350

Appeal by defendant from order entered 27 September 2013 by Judge Wayland J. Sermons in Nash County Superior Court. Heard in the Court of Appeals 14 August 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Donald W. Laton, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Hannah Hall, for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Earl Cherry ("Defendant") appeals from an amended order denying his motion to suppress evidence seized by police as the result of an allegedly unlawful entry and search at a private residence in Rocky Mount. Defendant's appeal from the trial court's order lies of right to this Court pursuant to N.C. Gen.

Stat. § 7A-27(b) and § 15A-979(b) (2013). Upon review, we affirm.

This is the second time that Defendant's case has been reviewed by this Court. *See State v. Cherry*, ___ N.C. App. ___, 746 S.E.2d 22, 2013 WL 3131033 (2013) (unpublished) ("*Cherry I*"). We adopt the factual and procedural history of this matter as stated in this Court's prior opinion:

> In May 2011, Officer Curtis Robinson ("Officer Robinson"), with the Rocky Mount Police Department ("RMPD"), received a tip from a confidential informant that a man named Earl was selling marijuana from an apartment with the address, 450 Sled Court ("the apartment"), which was located in the Rolling Meadows apartment complex ("Rolling Meadows") in Rocky Mount, North Carolina. On 1 and 2 May 2011, Officer Robinson performed surveillance at Rolling Meadows and learned that [D]efendant was Earl. Officer Robinson also discovered that [D]efendant had outstanding unserved warrants in the NCAWARE system. On one of [D]efendant's criminal summonses, 450 Sled Court was listed as his address. Officer Robinson received additional information that [D]efendant resided at 450 Sled Court.
>
> On 3 May 2011, after Officer Robinson observed [D]efendant entering the apartment, he contacted Officer J.T. Manning ("Officer Manning"), requesting his assistance with serving the warrants. When Officer Manning arrived, both officers knocked on the door. Although Officer Robinson believed [D]efendant was present in the apartment, he asked for "Hernandez" since asking for a person other than the one named in the

warrant is usually an effective way to get someone to answer the door.

After six to seven minutes, Latoya Howington ("Howington") answered the door. Despite the fact that Howington told the officers only she and her small children were located inside the apartment, the officers entered the apartment. The officers located [D]efendant in a back bedroom and arrested him for the offenses on the outstanding warrants. Officer Robinson also informed Howington that he planned to obtain a search warrant because Officer Manning observed marijuana in an ashtray outside the apartment doorway and detected the possibility of the presence of marijuana from an odor inside the apartment. After Howington consented to a search of the apartment, [D]efendant showed the officers where he placed the marijuana. Officers located five bags of marijuana, a set of scales and $137.00 in United States currency.

Defendant was indicted for possession with intent to sell and deliver marijuana, felony possession of marijuana and possession of drug paraphernalia. Defendant filed a pretrial motion to suppress all evidence, alleging that both the entry and search of Howington's apartment was unlawful. On 2 April 2012, the trial court conducted a hearing on [D]efendant's motion to suppress and denied the motion. Defendant then filed a written notice of preservation of his right to appeal the motion to suppress. Defendant then pled guilty to possession of marijuana and the State dismissed the remaining charges. The trial court sentenced defendant to a minimum of 10 months and maximum of 12 months in the North Carolina Division of Adult Correction.

*Id.* at *1-2 (footnote omitted).

In *Cherry I*, Defendant appealed the trial court's order arguing, *inter alia*, that the trial court's findings of fact did not support the conclusion that police officers made a legal entry into the residence pursuant to N.C. Gen. Stat. § 15A-401(e)(1) (2013) to effectuate Defendant's arrest. *Id.* at *3-4. That statute provides that:

> A law-enforcement officer may enter private premises or a vehicle to effect an arrest when:
>
> a. The officer has in his possession a warrant or order or a copy of the warrant or order for the arrest of a person, provided that an officer may utilize a copy of a warrant or order only if the original warrant or order is in the possession of a member of a law enforcement agency located in the county where the officer is employed and the officer verifies with the agency that the warrant is current and valid; or the officer is authorized to arrest a person without a warrant or order having been issued,
>
> b. The officer has reasonable cause to believe the person to be arrested is present, and
>
> c. The officer has given, or made reasonable effort to give, notice of his authority and purpose to an occupant thereof, unless there is reasonable cause to believe that the giving of such notice would present a clear danger to human life.

N.C. Gen. Stat. § 15A-401(e)(1).

The relevant findings of fact in the trial court's original order were as follows:

> 4. Officer Robinson conducted surveillance on the Rolling Meadows apartment complex on May 1, 2011 and May 2, 2011 looking for narcotic activity. On May 3, 2011, while observing apartment 450, uniformed Officer Robinson verified that "Earl" was present in the apartment.
>
> 5. Officer Robinson found the suspects last name to be Cherry and that he had six outstanding warrants. Officer Manning arrived on scene to assist Officer Robinson with warrant service of the warrants that were listed and displayable in NCAWARE.
>
> . . .
>
> 7. The Rocky Mount officers knocked on the door and waited several minutes. No one answered and Officer Manning asked through the door for "Hernandez". While waiting, Officer Manning noticed a marijuana blunt in an ashtray on the porch.
>
> 8. According to Latoya Howington's testimony she answered the door and told the officers "Hernandez doesn't live here, stay right here and I'll be back. I'm going to get my license."
>
> 9. Officers Robinson and Manning testified that they asked Latoya Howington for "Hernandez" initially to get someone to respond to the door and then asked if Earl Cherry was inside because they were there to serve arrest warrants. According to the

officers' testimony, Ms. Howington responded at both times that no one was in the apartment but her and her children.

Upon review of the record evidence and the trial court's findings, we stated that

> [t]here was conflicting evidence regarding when, or if, the officers informed Howington that they were looking for [D]efendant. Officer Robinson testified that they informed Howington that they were there to serve [D]efendant warrants. Officer Manning testified that Officer Robinson mentioned [D]efendant upon entry into the apartment. However, Howington testified that they only mentioned "Hernandez" to her and never indicated they were there for [D]efendant.

*Cherry I*, 2013 WL 3131033, at *3. Accordingly, we held that

> [s]ince the trial court's finding of fact regarding the officers' announcement of their purpose and authority to enter Howington's apartment merely reiterated the officers' testimony, rather than determined the issue, the trial court's findings did not support its conclusion that proper notice was given in accordance with N.C. Gen. Stat. § 15A-401(e)(1)(c).

*Id.* at *4. We remanded for the trial court to resolve this conflict in the evidence and to again determine the legality of the entry into the apartment. *Id.*

On remand, the trial court took no additional evidence and relied on the transcript from the first motion hearing. On 27 September 2013, the trial court entered an amended order

incorporating each finding of fact and conclusion of law from its original order and finding the following additional facts:

> 4(a) The officer observed the Defendant walking in the apartment complex, and saw him enter apartment 450 at Sled Court.
>
> 5(a) That the N.C. Aware system allows an officer in the field to pull up an electronic version of an outstanding warrant, and Officer Robinson was in possession of the electronic warrants for Defendant at the time he entered Howington's apartment.
>
> 9(a) That the Court specifically finds that Officer Robinson gave Latoya Howington notice that his purpose in being at her apartment was to locate the Defendant, and serve him with outstanding arrest warrants.

Based on its findings, the trial court concluded:

> 3. That the possession of electronic copies of Defendant's outstanding arrest warrants on Officer Robinson's electronic device complies with N.C.G.S. 15A-401(e)(1)(a).
>
> 4. That Officer Robinson had reasonable cause to believe that the Defendant was present in Howington's apartment pursuant to N.C.G.S. 15A-401(e)(1)(b).
>
> 5. That Officer Robinson gave notice of his authority and purpose to Ms. Howington, an occupant of the apartment, which complies with N.C.G.S. 15A-401(e)(1)(c).

Thus, the trial court concluded that the officers made a legal entry into the residence pursuant to N.C. Gen. Stat. § 15A-401(e)(1) and denied Defendant's motion to suppress. Defendant

appealed again to this Court, seeking review of the trial court's amended order.

Defendants brief to this Court raises a number of issues on appeal, many of which are the same issues that this Court refused to review in *Cherry I*. *See, e.g.*, *Cherry I*, 2013 WL 3131033, at *4 ("Defendant's brief raises numerous other issues. However, as these issues were not presented to the trial court in [D]efendant's motion to suppress evidence or during the hearing, we decline to review them on appeal."). Upon review of the brief submitted to this Court by Defendant in *Cherry I*, we are troubled and perplexed that Defendant's appellate counsel essentially submitted the same brief again, seeking review of issues this Court has expressly refused to consider. We note that our Rules of Appellate Procedure allow this Court to

> impose a sanction against a party or attorney or both when the court determines that an appeal or any proceeding in an appeal was frivolous because . . . a petition, motion, brief, record, or other paper filed in the appeal was grossly lacking in the requirements of propriety, grossly violated appellate court rules, or grossly disregarded the requirements of a fair presentation of the issues to the appellate court.

N.C. R. App. P. 34(a). Although we decline to exercise this authority here, we emphasize that this Court's efficient

administration of justice is compromised by such action and caution against future infractions of this sort.

Accordingly, we limit our review to those portions of Defendant's brief that challenge the trial court's amended order, answering specifically: (1) whether the trial court resolved the conflict in the evidence concerning the legality of the police officers' entry into the apartment, and (2) whether the trial court erred in concluding that "the possession of electronic copies of Defendant's outstanding arrest warrants on Officer Robinson's electronic device complies with N.C.G.S. 15A-401(e)(1)(a)." We address each in turn.

With respect to the first issue, Defendant contends that the trial court's amended order does not resolve the conflict of whether the officers gave notice to Howington concerning their authority and purpose *prior* to entering the apartment. Defendant also contends that finding of fact 9(a) fails to establish that the officers asked for Defendant by name. We disagree.

In finding of fact 9(a), the trial court specifically found "that Officer Robinson gave Latoya Howington notice that his purpose in being at her apartment was to locate the Defendant, and serve him with outstanding arrest warrants." This finding

of fact is responsive to this Court's remand instruction in *Cherry I*. The finding resolves the conflict between the officers' testimony that they told Howington before entering the apartment that they were there to serve arrest warrants on Earl Cherry and Howington's testimony that they did not. By entering finding of fact 9(a), the trial court decided to believe the officers' testimony over Howington's, which, as the trier of fact at the motion hearing, was the trial court's prerogative. *See State v. Clark*, 211 N.C. App. 60, 65, 714 S.E.2d 754, 758 (2011) (stating that if "the trial court's factual findings have adequate evidentiary support, they are conclusive for purposes of appellate review even if the record contains conflicting evidence.").

Furthermore, read in context with the findings of fact from the previous order, finding 9(a) establishes that the officers announced their authority and purpose before entering the apartment. The trial court's findings progress in chronological order and it is not until finding of fact 10 that the trial court finds that "Rocky Mount officers made entry into the apartment and located Earl Cherry standing in the back bedroom." The fact that finding 9(a), standing alone, is unclear as to where it fits into the timeline does not warrant additional

fact-finding. Read in context with the other findings of fact, finding 9(a) establishes that the officers announced their authority and purpose prior to entering the apartment. Defendant's first argument is overruled.

With respect to the second issue, Defendant contends that the trial court erred as a matter of law when it concluded on remand that "the possession of electronic copies of Defendant's outstanding arrest warrants on Officer Robinson's electronic device complies with N.C.G.S. 15A-401(e)(1)(a)." Specifically, Defendant contends that, pursuant to N.C. Gen. Stat. § 15A-401(e)(1)(a), the officers were required to have paper copies of the warrants in their possession before entering the apartment to effectuate Defendant's arrest. *See* N.C. Gen. Stat. § 15A-401(e)(1)(a) (stating that "[a] law enforcement officer may enter private premises or a vehicle to effect an arrest when . . . [t]he officer has in his possession a warrant or order or a copy of the warrant or order for the arrest of a person . . . .").

At the outset, we acknowledge that in *Cherry I*, this Court expressly refused to review this issue. *Cherry I*, 2013 WL 3131033, at *3 ("On appeal, [D]efendant challenges the trial court's conclusion that the officers were in possession of

warrants through NCAWARE, contending that it was necessary for the officers to have paper copies of the warrants.  At the hearing, however, [D]efendant did not challenge the manner in which the officers served [D]efendant.  Therefore, we decline to review this issue on appeal.").  However, because on remand the trial court entered a *new* conclusion of law concerning this issue, we review that conclusion here for the limited purpose of determining if it is an accurate statement of the law.

Officer Robinson did not have a paper copy of Defendant's outstanding warrants with him when Defendant was arrested. Officer Robinson accessed Defendant's warrants electronically at the scene using NCAWARE.

> NCAWARE is an acronym for the North Carolina Warrant Repository.  The system was designed to issue and track warrants for all wanted persons in North Carolina.  NCAWARE maintains detailed information about criminal processes, such as warrants, magistrate orders, citations that lead to an arrest, criminal summons, orders for arrest, release orders, and appearance bonds.  It also tracks information and details for all people and businesses involved in such processes.  NCAWARE is a custom-developed, web-based system that was designed, written, tested and implemented by the N.C. Judicial Department's Administrative Office of the Courts (NCAOC). . . . This statewide system launched in June 2008 in Johnston County and is being rolled out county-by-county. . . . Once the system is fully implemented in all 100 counties, the number

> of users of NCAWARE, including law enforcement, is estimated to reach 35,000.

*NCAWARE Fact Sheet*, The North Carolina Court System, http://www.nccourts.org/news/ncawarefacts.asp (last visited Aug. 21, 2014). Thus, the question presented, which we discern to be a question of first impression before this Court, is of statewide significance to law enforcement officials accessing criminal processes using NCAWARE.

Upon careful review, we hold that an officer "possesses" a warrant for purposes of satisfying N.C. Gen. Stat. § 15A-401(e)(1)(a) if the officer has a displayable electronic version of the warrant on an electronic device in the officer's possession. Under N.C. Gen. Stat. § 15A-101.1 (2013), entitled, "Electronic technology in criminal process and procedure," Section (9)(b) defines an "Original" document as any "document existing in electronic form, including the electronic form of the document and any copy that is printed from the electronic form." It follows therefore, that possession of the electronic form of a document is possession of the original document itself. Accordingly, by having an electronic version of Defendant's arrest warrants pulled up on his computer, Officer Robinson was in possession of Defendant's outstanding warrants and the trial court did not err in concluding that Officer

Robinson complied with N.C. Gen. Stat. § 15A-401(e)(1) before entering the apartment to effectuate Defendant's arrest. Defendant's second argument is overruled.

Notably, however, our holding with respect to this issue is a limited one. In concluding that the possession of an electronic version of an arrest warrant complies with the "possession" requirement of N.C. Gen. Stat. § 15A-401(e)(1), we do not reach questions concerning service of the warrant pursuant to N.C. Gen. Stat. § 15A-301(c)(1) and § 15A-301.1(g), (k) (2013). *See Cherry I*, 2013 WL 3131033, at *3 ("[D]efendant did not challenge the manner in which the officers served [D]efendant. Therefore, we decline to review this issue on appeal.").

In summary, because the trial court resolved the conflict in the evidence previously identified by this Court concerning the legality of the police officers' entry into the apartment, and because the trial court properly concluded that Officer Robinson's possession of an electronic version of Defendant's warrants complied with N.C. Gen. Stat. § 15A-401(e)(1)(a), the trial court's amended order denying Defendant's motion to suppress is affirmed.

AFFIRMED.

Judges STEELMAN and GEER concur.

Report per Rule 30(e).